## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENITA DIXON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN UNIVERSITY,<br><br>Defendant. | Case No. 2:24-cv-01057<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Benita Dixon ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant, Lincoln University ("Lincoln" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2.     Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational

product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3.      During the 2019-2020 academic year, Lincoln offered exclusively an on-campus, in-person educational experience at its principal campus in Chester County, Pennsylvania.[1]

4.      Plaintiff, an undergraduate student during the Spring 2020 semester, paid tuition to and fees to enroll in Lincoln's on-campus, in-person education program, including all the benefits and services associated therewith for the entirety of the semester.

5.      Plaintiff's paid-for experience was cut short mid-way through the spring of 2020, when that in-person educational experience was taken away from Plaintiff and other students at Lincoln for the remaining duration of the Spring 2020 semester.

6.      In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Lincoln, like many other universities, transitioned to remote online-only education, canceled on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

---

[1] https://nces.ed.gov/ipeds/datacenter/FacsimileView.aspx?surveyNumber=1& unitId=213598&year=2019 (last visited Mar. 11, 2024).

7.     As a result, the on-campus educational experience for which students paid was no longer available to Lincoln students for the remainder of the Spring 2020 semester.

8.     Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Lincoln refused to provide a prorated refund of tuition or fees tied to an on-campus educational experience that was not available to students for a significant part of the Spring 2020 semester.

9.     Accordingly, Lincoln's students lost the benefits of the bargain for services and the experience they paid for but could no longer access or use following the school's transition to remote learning in March 2020.

10.    By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, Lincoln breached its contracts with students or was otherwise unjustly enriched.

11.    It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12.    It is unfair and unlawful for Lincoln to retain tuition for campus-based in-person education and services not being provided and to pass the financial losses on to its students.

13.     Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Lincoln's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

14.     Plaintiff brings this class action for damages and restitution, resulting from Lincoln's retention of the tuition and fees paid by Plaintiff and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of fees that Plaintiff and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefits as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

## **PARTIES**

15.     Plaintiff Dixon is an adult, who at all relevant times, is a resident and citizen of the Commonwealth of Pennsylvania. She paid tuition and fees for the Spring 2020 semester. Less than halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16.     Plaintiff Dixon was an undergraduate student enrolled at Lincoln for the Spring 2020 semester, which was scheduled to run from approximately January 6, 2020 to April 18, 2020. Plaintiff did not have access to the campus after March 15, 2020 because the campus was closed due to the COVID-19 pandemic. Plaintiff paid tuition for an in-person educational experience during the Spring 2020 semester, the benefits of which she lost because Lincoln closed the campus and cut off access to the library, computer and science laboratories, recreational facilities, extracurricular activities, and other on-campus services, facilities, and events.

17.     Defendant Lincoln University is an institution of higher education the enrolls approximately 2,000 undergraduate from numerous states across the country. Defendant's principal campus is located in Chester County, Pennsylvania. Defenant is a citizen of the Commonwealth of Pennsylvania.

18.     Although Defendant receives annual, non-preferred financial appropriations from the Commonwealth of Pennsylvania in exchange for offering discounted tuition to in-state students, it is a separate legal entity, operating under its own charger and governed by a Board of Trustees.

19.     Through its Board of Trustees, Lincoln manages its own assets, sets its own tuition and fees, directs its own financial policy, and otherwise is responsible for the acts and omissions set forth in this Complaint.

## JURISDICTION AND VENUE

20.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

21.    This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District and soliciting students residing in this District to attend its institution.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL BACKGROUND

23.    Prior to the COVID-19 pandemic, Lincoln had a longstanding tradition of offering its courses in face-to-face classroom settings on campus. In accordance with this prior course of conduct, Lincoln's Spring 2020 courses were scheduled to be in-person and on-campus as Defendant did not offer any remote courses at the

beginning of the 2019-2020 semester.[2] Indeed, Lincoln did not begin offering remote courses until the 2020-2021 academic year.[3]

24.     But even though Lincoln now offers courses in a blended learning experience, "mixing-in person teaching with online course materials," Lincoln does not offer any online degree programs because "[c]oming together on our campus is an essential part of the Lincoln experience."[4] As such, Lincoln acknowledges that a core part of its educational experience is the enrollment in on-campus, in-person classes.

25.     To enroll in classes during the Spring 2020 semester, Lincoln students were required to pay tuition and fees, including the General Fee, the Student Services Fee, the Student Achievement Fee, the Student Enhancement Fee, and the Technology Fee (collectively, the "Mandatory Fees"). The Mandatory Fees are summarized as follows:

- The General Fee is used to provide students with "essential student services not directly associated with specific courses or other mandatory fees;"

---

[2] https://nces.ed.gov/ipeds/datacenter/FacsimileView.aspx?surveyNumber=1&unitId=213598&year=2019 (last visited Mar. 11, 2024).
[3] https://nces.ed.gov/ipeds/datacenter/FacsimileView.aspx?surveyNumber=1&unitId=213598&year=2021 (last visited Mar. 11, 2024).
[4] https://www.lincoln.edu/academics/academic-affairs/online-and-blended-learning/index.html (last visited Mar. 11, 2024).

- The Student Achievement Fee is used to "offset student scholarships and fund-student-based organization endeavors;"

- The Student Enhancement Fee is used to "offset[] costs relating to student scholarships and the University's bands, choirs, and athletic teams;"

- The Student Services Fee "goes to supporting the services provided . . . by the offices of Health Services, Student Life and Development, the Student Government Association, and Academic Support;" and

- The Technology Fee with "supports the use of the computer labs on campus and at the School of Adult & Continuing Education at University City," in addition to helping fund technologies that support remote learning.[5]

26.     Tuition for in-state undergraduate students for the Spring 2020 semester was $4,013, and Tuition for out-of-state undergraduate students was $6,698. In-state undergraduate students paid a $422 General Fee, a $289 Student Services Fee, a $16 Student Achievement Fee, a $361 Student Enhancement Fee, and a $425 Technology fee for the Spring 2020 semester while out-of-state

---

[5] https://www.lincoln.edu/admissions/cost-attendance/tuition-fees.html (last visited Mar. 11, 2024).

undergraduate students paid a $828 General Fee, a $292 Student Services Fee, a $16 Student Achievement Fee, a $364 Student Enhancement Fee, and a $429 Technology Fee.[6]

27.     Lincoln uses its marketing materials, course catalog, and other bulletins to highlight to prospective students the benefits of enrolling in its on-campus, in-person educational programs.

28.     For example, Lincoln's website touts that "[w]hen you choose Lincoln University, you're doing more than just enrolling at a school. You're becoming part of a campus community that is tight like a family and filled with people who look out for each other."[7]

29.     Lincoln also uses its' website to emphasize the importance of face-to-face  as part of its on-campus and in-person educational programs stating that "[w]hen you enter the gates of Lincoln University as a student you will feel immediately accepted into a community that supports you and is devoted to helping you find a path that will lead to your graduation and success"[8] while also highlighted a "15:1 student to faculty ratio, small classes, and a culture of support from our university president down to every staff member so you'll be able to achieve more

---

[6] https://www.lincoln.edu/_files/2019Catalog.pdf, at 20-21 (last visited Mar. 11, 2024).

[7] https://www.lincoln.edu/about/index.html (last visited Mar. 11, 2024).

[8] https://www.lincoln.edu/admissions/undergraduate/index.html (last visited Mar. 11, 2024).

than you thought possible."[9]

30.    Lincoln also promotes the benefits of its on-campus community as a benefit of enrollment in its in-person and on-campus program, informing prospective students that "[w]hatever you're looking for out of a college experience, you can find it at Lincoln."[10] This includes:

- "Parties, concerts, step shows, talent competitions, [and] special speakers . . . right outside your door on the Lincoln campus;"[11]

- Participation in numerous clubs and organizations, which Lincoln touts as "[t]he best way to get to know your campus community…to enrich your Lincoln experience…to gain important leadership and social skills…and to unwind from your academic schedule;"[12] and

- Recreation activities at the Lincoln's Recreational Center, which helps promote competition and fun among students through billiards, ping pong, and board, video, and card games.[13]

31.    Indeed, Lincoln touts its campus community as a reason for enrollment:

---

[9] https://www.lincoln.edu/academics/index.html (last visited Mar. 11, 2024).
[10] https://www.lincoln.edu/student-life/index.html (last visited Mar. 11, 2024).
[11] *Id.*
[12] https://www.lincoln.edu/student-life/clubs-and-organizations/index.html (last visited Mar. 11, 2024).
[13] https://www.lincoln.edu/student-life/lair-recreation-center/mission.html (last visited Mar. 11, 2024).

> Located amid the rolling farmlands and wooded hilltops of southern Chester County in Pennsylvania, Lincoln's campus is a close-knit community filled with fun events, many student clubs and organizations, and an active Greek life for those interested in joining a fraternity or sorority. We also host a yearly, Homecoming celebration that combines school pride with amazing entertainment to create an unforgettable party for everyone on campus.[14]

32.     Further, Lincoln offers a range of in-person support facilities and services as a significant benefit of enrollment in its on-campus programs. These services include:

- The Mathematics Learning Center, which offers a variety of services from placement testing to math tutoring to help students develop the math skills "needed to succeed in [their] classes, at work, and in [their] daily life;"[15]

- The Writing and Reading Center, which offers students individual tutoring on writing and reading along with the ability to write and conduct research "at more than 20 computer work stations;"[16]

---

[14] https://www.lincoln.edu/about/index.html (last visited Mar. 11, 2024).

[15] https://www.lincoln.edu/academics/academic-support/mathematics-learning-center-mlc/index.html (last visited Mar. 11, 2024).

[16] https://www.lincoln.edu/academics/academic-support/writing-and-reading-center/index.html (last visited Mar. 11, 2024).

- The Langston Hughes Memorial Library, where students can "find a catalog of more than 185,000 books, periodicals, computer labs, reading lounges, study rooms for individuals or groups, microform, and the full and extensive University archive;"[17]

- The Health and Wellnesses Center, which "contains basketball courts, locker rooms, classrooms, administrative and faculty offices, a track, rock climbing wall, weight and fitness equipment, health clinic, and a healthy eating café;"[18] and

- The Student Union Building, which houses Lincoln's Radio and TV Operations, with "state of the art digital and HD equipment in both its' studios and control room with Panasonic multi-format cameras for that professional touch. There are nine (9) workstations with Adobe Premier and Final Cut Pro 7 along with [ ] Adobe-Audition for students to deliver stellar projects."[19]

---

[17] https://www.lincoln.edu/langston-hughes-memorial-library/index.html (last visited Mar. 11, 2024).

[18] https://www.lincoln.edu/about/maps/campus-buildings/health-and-wellness-center.html (last visited Mar. 11, 2024).

[19] https://www.lincoln.edu/academics/academic-affairs/radio-tv-operations.html (last visited Mar. 11, 2024).

33.     Moreover, Lincoln touts its "one-of-a-kind"[20] campus as a reason for enrolling in its in-person, on-campus educational experience, calling its main campus in Chester County "an oasis amid rolling farmlands and wooded hilltops."[21]

34.     Finally, Lincoln further highlights the location of its campus as a benefit of enrollment: "[w]e are [ ] located within about an hour of several major cities: we are 45 miles from Philadelphia; 55 miles from Baltimore; and in Delaware, 25 miles from Wilmington, and 15 miles from Newark. These cities not only provide a variety of entertainment and leisure options but many important job and internship opportunities for our students."[22]

35.     When enrolling in classes for the Spring 2020 semester, Plaintiff and members of the Class chose to enroll in classes offered in-person, to obtain the benefits outlined above.

36.     Plaintiff and members of the Class were also required to pay the Mandatory Fees to enroll in classes.

37.     Plaintiff and the members of the Class paid the Mandatory Fees for the Spring 2020 semester so they could benefit from on-campus services and facilities, including student activities and wellness services, offered by Lincoln.

---

[20] https://www.lincoln.edu/about/index.html (last visited Mar. 11, 2024).

[21] https://www.lincoln.edu/about/maps/index.html (last visited Mar. 11, 2024).

[22] https://www.lincoln.edu/about/index.html (last visited Mar. 11, 2024).

38.    Plaintiff and members of the Class paid their tuition and Mandatory Fees in the Spring 2020 semester to enjoy everything Lincoln offered them, including on-campus services and facilities and an in-person education throughout the entire Spring 2020 semester.

39.    Despite Plaintiff and Class members paying Spring 2020 semester tuition and Mandatory Fees to attend Lincoln for an in-person and on-campus educational experience, Lincoln failed to provide the promised in-person education and facility access for the duration of the entire Spring 2020 semester, instead providing only online instruction for more than half of the Spring 2020 semester.

***In Response to COVID-19, Lincoln Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled all In-Person Classes.***

40.    On March 11, 2020, in response to COVID-19, Lincoln suspended all face-to-face classes for the remainder of the Spring 2020 semester. Beginning March 30, 2020, courses thereafter resumed in only a remote format for the remainder of the semester.[23]

41.    On or around the same time, Lincoln residence halls, closed its library's physical location, prohibited building access, and cancelled all university-sponsored events and athletics, with students being given until March 15, 2020, to vacate

---

[23] https://education.pasenategop.com/wp-content/uploads/sites/49/2020/06/allen.pdf (last visited Mar. 11, 2024).

campus.[24]

42.     Lincoln did not hold any in-person classes for undergraduate students between March 12, 2020 and the end of Spring 2020 term. All Spring 2020 classes after March 12, 2020 were only offered in a remote, online format with no in-person, face-to-face engagement between students and faculty.

43.     Most campus facilities and services for which the Mandatory Fees were assessed were also terminated, cancelled, or severely curtailed at or about this time, such as access to the library, recreation center, health and wellness facilities and intramural facilities, as well as student organizations, programs, athletic events, and arts performances.

44.     Despite the fact that Lincoln's closure of campus and shift to online-only distance learning effected dramatic changes to students' bargained-for educational experience, Lincoln refused to adjust its tuition costs or offer any form of tuition refund or refund of the Mandatory Fee.

***Students Experienced Significant Losses, in many Cases of Borrowed Funds, as a Result of Lincoln's Conduct.***

45.     At Lincoln, the median federal loan debt among borrowers who completed their undergraduate degree is $18,250.[25] The median monthly federal

---

[24] *Id.*

[25]     https://www.usnews.com/best-colleges/lincoln-university-pennsylvania-3290/paying (last visited Mar. 11, 2024)

loan payment (if it were repaid over 10 years at 5.05% interest) for federal student loan borrowers who graduated from Lincoln is $299.[26]

46.   In addition, 11% of graduating students at Lincoln took out private loans.[27] Students with private loans had an average of $24,336 in private loan debt at graduation.[28]

47.   With the campus shut down for more than half of the semester, Plaintiff and the proposed Class have been deprived of the benefits of the on-campus educational experience as set forth above. Nevertheless, Lincoln has refused to refund any portion of tuition or the Mandatory Fees, despite not providing the on-campus educational experience and services for which students paid.

48.   Students attending Lincoln's Spring 2020 semester did not choose to attend an online institution of higher learning, but instead chose to enroll in Defendant's in-person, on campus educational program.

49.   During the online portion of the Spring 2020 semester, Lincoln principally used programs by which previously recorded lectures were posted on an online learning management system for students to view on their own, or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction between

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

students and professors and among students that is instrumental in interpersonal skill development.

50.     Students were deprived of the opportunity for hands-on, collaborative learning and in-person dialogue, feedback, and critique.

51.     Access to facilities such as libraries, laboratories, computer labs, and study rooms, integral to a university education, and access to the myriad activities offered by campus life that foster social development, leadership, wellness, independence, and networking for future careers, are all substantial and material parts of the basis upon which Lincoln can charge the tuition and Mandatory Fees it charges. Contrary to Lincoln's promises, these services and facilities were not provided.

52.     Plaintiff and the Class are therefore entitled to a prorated refund of the tuition and Mandatory Fees they paid Lincoln for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

## <u>CLASS ACTION ALLEGATIONS</u>

53.     Plaintiff brings this case individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the class defined as:

> All Lincoln University undergraduate students who satisfied their payment obligations for the Spring Semester 2020 tuition and enrolled in at least one in-person, on-campus class (the "Class").

54.     Specifically excluded from the Class are all undergraduate students who received full Lincoln-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

55.     Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definitions.

56.     **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Lincoln reported approximately 1,900 undergraduate students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Lincoln and can be identified through Lincoln's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

57.     **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

a. Whether Lincoln accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;

b. Whether Lincoln breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 12, 2020;

c. Whether Lincoln breached its contracts with Plaintiff and the Class by transitioning to remote education after mid-March 2020;

d. Whether Lincoln was unjustly enriched by retaining a portion of the tuition or Mandatory Fees during the period of time Lincoln was closed during the Spring 2020 semester, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience;

e. Whether Lincoln intentionally interfered with the rights of Plaintiff and the Class when it moved all in-person classes to remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued

19

services, all while retaining the tuition paid by Plaintiff and the Class; and

f.   The amount of damages and other relief to be awarded to Plaintiff and the Class members.

58.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus educational experience for the tuition they paid, that Lincoln stopped providing for the remainder of the Spring 2020 semester.

59.   **Adequacy of Representation:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members whom she seeks to represent; Plaintiff has retained competent counsel who are experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

60.   **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages

is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class members, then Plaintiff and each Class member suffered damages by that conduct.

61.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Lincoln, making it impracticable for Class Members to individually seek redress for Lincoln's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

62.   **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records.

## **<u>FIRST CLAIM FOR RELIEF</u>**
## **BREACH OF IMPLIED CONTRACT**
### **(On Behalf of Plaintiff and the Class under Pennsylvania Law)**

63.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

64.    Plaintiff brings this claim individually and on behalf of the members of the Class.

65.    When Plaintiff and Class members paid Lincoln tuition and the Mandatory Fees for the Spring 2020 semester, Lincoln agreed to, among other things, provide an in-person and on-campus educational experience as well as access to campus services and facilities to which the Mandatory Fees they paid pertained throughout the entire Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into binding implied contracts with Lincoln.

66.    When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Lincoln would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins, as well as Lincoln's history and prior course of providing in-person and on-campus education.

67.    Plaintiff and Class members fully performed their obligations under their implied contracts with Lincoln by registering for classes and paying tuition.

68.    Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on the one hand, and Lincoln on the other.

69.    Lincoln breached its contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as access to campus services and facilities to which the Mandatory Fees pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on-campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

70.    Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Lincoln's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when Lincoln discontinued in-person classes and closed campus facilities.

71.    Lincoln should return such portions of the tuition and Mandatory Fees to Plaintiff and each Class member.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class under Pennsylvania Law)

72.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiff and the Class do not have an enforceable contract with Lincoln regarding the relief requested.

74.     Plaintiff and members of the Class conferred a benefit on Lincoln in the form of tuition and the Mandatory Fees paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fees was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

75.     Lincoln knowingly accepted the benefits conferred upon it by Plaintiff and Class members.

76.     Lincoln has retained the full benefit of the tuition and Mandatory Fees payments made by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members were owed.

77.    For example, Lincoln failed to provide Plaintiff and Class members access to many on-campus facilities and services after March 15, 2020, yet Lincoln assessed Plaintiff and Class members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

78.    Indeed, as a result of closing campus and moving classes online, Lincoln saved significant sums of money in the way of reduced utility costs, reduced staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise.

79.    Upon information and belief, the costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.

80.    As a result of Lincoln's retention of all the tuition and Mandatory Fees paid by Plaintiff and members of the Class during the period of time Lincoln was closed, Plaintiff and members of the Class were denied an in-person and on-campus educational experience and access to services and facilities for which the Mandatory Fees were paid. This was unjust and inequitable under the circumstances.

81.    Allowing Lincoln to retain the full benefit of tuition and Mandatory Fees paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Lincoln, unjustly enriched Defendant.

82.     Accordingly, Lincoln has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fees that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when Lincoln discontinued in-person classes and closed campus facilities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

## **DEMAND FOR TRIAL BY JURY**

A jury trial is demanded on all claims so triable.

Dated: March 11, 2024                    Respectfully submitted,

*/s/ Nicholas A. Colella*
Gary F. Lynch (PA ID No. 56887)
Nicholas A. Colella (PA ID No. 332699)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
gary@lcllp.com
nickc@lcllp.com

*Counsel for Plaintiff and Proposed Class*