IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BENITA DIXON**, *individually and on behalf of others similarly situated,* | CIVIL ACTION |
| Plaintiff, | NO. 24-1057-KSM |
| v. | |
| **LINCOLN UNIVERSITY**, | |
| Defendant. | |

MEMORANDUM

**Marston, J.**                                                                                                   **September 10, 2024**

      Plaintiff Benita Dixon has sued Lincoln University on behalf of herself and others similarly situated alleging that Lincoln breached its contract with its students and was otherwise unjustly enriched when it retained tuition and fees for the spring 2020 semester even though the school exclusively offered online courses amid the COVID-19 pandemic. (Doc. No. 1 at ¶ 10.) Before the Court is Defendant's motion to dismiss for failure to state a claim and motion to strike Plaintiff's request for attorney's fees. (Doc. No. 12.) For the reasons set forth below, the Court will deny Defendant's motion in its entirety.

**I.      BACKGROUND**

      **A.      Factual Background**[1]

      Defendant Lincoln University is a higher education institution located in Chester County, Pennsylvania that enrolls approximately 2,000 undergraduate students. (Doc. No. 1 at ¶ 17.) Before the spring 2020 semester, Defendant provided an exclusively in-person education and did

---

[1] For purposes of this Memorandum, all facts presented in Plaintiff's Complaint are taken as true and accurate. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

not offer online-only courses to students.[2]  (*Id.* at ¶ 23.)  Indeed, Defendant stressed the importance of this in-person experience on its website, claiming that "[c]oming together on our campus is an essential part of the Lincoln experience" and that "[w]hen you choose Lincoln University, you're doing more than just enrolling at a school.  You're becoming part of a campus community that is tight like a family and filled with people who look out for each other."  (*Id.* at ¶¶ 24, 28.)

Defendant's marketing materials, website, course catalog, and other bulletins further tout the benefits of its in-person educational experience and emphasize the importance of its campus community.  (*Id.* at ¶ 27.)  These materials highlight on-campus activities such as "parties, concerts, step shows, talent competitions, [] special speakers," a "homecoming celebration," "numerous clubs and organizations," and "recreation activities at the Lincoln's Recreational Center."  (*Id.* at ¶¶ 30–31.)  They also advertise Defendant's "in-person support facilities" such as learning and research centers, its library, the "Health and Wellness Center," and the "Student Union Building."  (*Id.* at ¶ 32.)  Additionally, Defendant's materials boast about its campus's location, describing itself as "an oasis amid rolling farmlands and wooded hilltops" that is located "45 miles from Philadelphia; 55 miles from Baltimore . . . 25 miles from Wilmington, and 15 miles from Newark."  (*Id.* at ¶¶ 33–34.)  Defendant claims that its campus's proximity to these major cities provides students with access to "entertainment and leisure options" and "important job and internship opportunities."  (*Id.*)

---

[2] Today, with the COVID-19 pandemic at the center of this litigation having largely subsided, Lincoln offers a predominately in-person education with some courses offered as a "blended learning experience, 'mixing [in-person] teaching with online course materials.'"  (Doc. No. 1 at ¶ 24 (quoting LINCOLN UNIVERSITY, Online and Blended Learning, https://www.lincoln.edu/academics/academic-affairs/online-and-blended-learning/index.html (last visited Jul. 26, 2024)).)  Lincoln does not offer an online degree program.  (*Id.*)

The tuition for attending Lincoln University for the spring 2020 semester was $4,013 for in-state undergraduate students and $6,698 for out-of-state undergraduate students. (*Id.* at ¶ 26.) In addition to tuition, students at Lincoln were required to pay fees to cover many of the services described above. (*Id.* at ¶ 25.) Referred to collectively as the "Mandatory Fees," this included the following:

- "The General Fee," used to provide students with "essential student services not directly associated with specific courses or other mandatory fees;"

- "The Student Achievement Fee," used to "offset student scholarships and fund-student-based organization endeavors;"

- "The Student Enhancement Fee," used to "offset costs relating to student scholarships and the University's bands, choirs, and athletic teams;"

- "The Student Services Fee," used to support "the services provided by the offices of Health Services, Student Life and Development, the Student Government Association, and Academic Support;" and

- "The Technology Fee," used to "support[] the use of the computer labs on campus and at the School of Adult & Continuing Education at University City," "in addition to helping fund technologies that support remote learning."

(*Id.* (alterations accepted))  The collective cost of these fees was $1,513 for in-state students and $1,929 for out-of-state students. (*Id.* at ¶ 26.)

Plaintiff Benita Dixon was enrolled as a student at Lincoln University for the spring 2020 semester. (*Id.* at ¶ 16.)  She paid tuition and the Mandatory Fees in anticipation of the in-person education experience described above. (*Id.* at ¶¶ 15–16, 35.)  However, on March 11, 2020, roughly 10 weeks into the spring 2020 semester, in the face of the unprecedented COVID-19 pandemic, Defendant suspended all in-person classes.[3] (*Id.* at ¶ 40.)  Around this time,

---

[3] As Defendant asserts, around this time Pennsylvania Governor Tom Wolf "issued a disaster proclamation, ordered all non-essential business to close, and issued stay-at-home orders throughout"

Defendant closed its resident halls and facilities, revoked access to most campus services, cancelled all university-sponsored events, and required students to vacate the campus. (*Id.* at ¶ 41.) In other words, "[m]ost campus facilities and services for which the Mandatory Fees were assessed were . . . terminated, cancelled, or severely curtailed." (*Id.* at 43.) Then, beginning on March 30, 2020, and continuing through the rest of the semester, Defendant converted all face-to-face classes to an online, remote format.[4] (*Id.* at ¶¶ 40, 42.) Thus, beginning in March of 2020, Plaintiff was "forced to take her classes remotely, refrain from visiting campus, and prevented from utilizing various on-campus services for which she paid." (*Id.* at ¶ 15.) Defendant, however, refused to offer any refund of the tuition or Mandatory Fee. (*Id.* at ¶ 44.)

### B.     Procedural History

On March 11, 2024, Plaintiff filed the instant class action Complaint, through which she asserts claims for breach of implied contract and unjust enrichment. (*Id.*) Plaintiff alleges that Defendant breached its implied contract with its students "[b]y not giving prorated refunds for tuition or fees charged for on-campus education and services not provided." (*Id.* at ¶ 10.) She further alleges that Defendant was unjustly enriched by retaining the tuition and fees even though

---

Pennsylvania. (Doc. No. 12 at 1.) These orders are not mentioned in the Complaint. Additionally, Defendant did not attach the relevant orders to its motion, identify which specific orders it references, or explain why the Court can consider them at this stage. Nevertheless, because it is a matter of public record and not subject to reasonable dispute, the Court takes judicial notice of the fact that Governor Wolf issued stay-at-home orders and required non-essential businesses to close in the spring of 2020. *See Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44, 53 (D. Del. 2021) (Bibas, J., circuit judge, sitting by designation) (taking judicial notice of a Delaware governor's order that colleges stop in-person activities because the order was "not subject to reasonable dispute"); Governor Wolf, "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home," (Apr. 1, 2020), Commonwealth of Pennsylvania Office of the Governor, https://www.hermitage.net/DocumentCenter/View/1779/Gov-Wolf-Statewide-Stay-At-Home-Order.

[4] The online classes provided by Defendant were in the form of either previously recorded lectures or virtual Zoom meetings, thus removing the "hands-on, collaborative learning" provided by face-to-face courses. (Doc. No. 1 at ¶ 49.)

Defendant failed to provide the services these payments covered and "saved significant sums of money" as a result of moving classes to a fully online model. (*Id.* at ¶ 78.) Through these claims, Plaintiff is not challenging Defendant's "discretion in adhering to federal, state, and local health guidelines," but instead, is challenging Defendant's decision to retain tuition and fees paid for an in-person education that was not provided. (*Id.* at ¶ 13.) As damages, Plaintiff seeks a prorated refund of the tuition and Mandatory Fees paid to Lincoln for the portion of the spring 2020 semester after classes moved from in-person to online and facilities were closed. (*Id.* at ¶ 52.) Plaintiff seeks these damages on behalf of herself and a proposed class of "all Lincoln University undergraduate students who satisfied their payment obligations for the Spring Semester 2020 tuition and enrolled in at least one in-person, on-campus class."[5] (*Id.* at ¶ 53.)

On June 24, 2024, Defendant filed the instant motion to dismiss for failure to state a claim, asserting that the Complaint should be dismissed in its entirety. (Doc. No. 12.) Defendant also moves to strike Plaintiff's request for attorney's fees if the Court does not dismiss the Complaint. (*Id.*) Plaintiff opposes the motion. (Doc. No. 13.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

---

[5] "Specifically excluded from the Class are all undergraduate students who received full Lincoln-funded scholarships for the Spring 2020 semester, Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers." (Doc. No. 1 at ¶ 54.)

'probability requirement.'" *Id.* Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). It is Defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

**III.   ANALYSIS**

As noted above, Plaintiff brings claims for breach of implied contract and unjust enrichment. (Doc. No. 1.) Defendant argues that both claims must be dismissed because, while framed as contract and quasi-contract claims, these are truly non-cognizable educational malpractice claims. (Doc. No. 12.) Defendant also argues that Plaintiff's claim for breach of implied contract is barred under the theory of impossibility and that Plaintiff has failed to plead a cause of action for unjust enrichment. (*Id.*) Finally, to the extent any portion of the Complaint survives dismissal, Defendant moves to strike Plaintiff's request for attorney's fees. (*Id.*) The Court addresses each argument in turn and finds that many of them are contrary to the Third

Circuit's recent opinion in *Hickey v. University of Pittsburgh*, 81 F.4th 301 (3d Cir. 2023).[6]

### A. Educational Malpractice

Defendant first argues that Plaintiff's claims, which Defendant asserts are premised on Plaintiff receiving an inadequate education, are "non-cognizable educational malpractice claims masquerading as contract and quasi-contract claims." (Doc. No. 12-1 at 10 (citing *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992); *Swartley v. Hoffner*, 734 A.2d 915, 918–19 (Pa. Super. Ct. 1999).) The Third Circuit recently rejected this exact argument and held that claims related to the retention of tuition and fees during the COVID-19 pandemic are properly construed as a contract claims, not educational malpractice claims. 81 F.4th at 311. In *Hickey*, students from the University of Pittsburgh and Temple University sought "partial refunds of tuition and fees on the grounds that they received a materially different educational experience than they were promised and that they were denied access to on-campus facilities and services for which they paid specific fees." 81 F.4th at 305–07. The students asserted claims for breach of implied contract and unjust enrichment. *Id.* at 306–07. The university defendants argued, among other things, that "the Students' tuition claims amount to no more than educational malpractice claims." *Id.* at 311 n.7. The Third Circuit disagreed. *Id.* Noting that under Pennsylvania law, "students may bring breach of contract claims for 'specific undertakings' that a university promised but failed to deliver," the court found that, the "[s]tudents' claims are not that the education they received was inadequate, but rather that the Universities failed to provide a specific type of education—live and in-person—that was

---

[6] Even though the Third Circuit's recent opinion in *Hickey* addressed many of the issues raised by Defendant's motion, Defendant's brief conspicuously makes no reference to it. The Court is troubled by this omission.

essential to the bargain." *Id.* at 311 & n.7 (quoting *Cavaliere*, 605 A.2d at 404).

Here, like the students in *Hickey*, Plaintiff is not arguing that the education she received was poor or that Defendant should not have switched to online education, as would be properly characterized as an educational malpractice claim. *See Cavaliere*, 605 A.2d at 403 (rejecting a "general cause of action for educational malpractice . . . where the allegation is simply that the educational institution failed to provide a quality education"). Instead, Plaintiff asserts that Defendant breached its promise to provide a specific type of education—the in-person, on-campus education that Defendant advertised in its marketing materials—and that Defendant retained fees and payments without providing the corresponding services. (Doc. No. 1 at ¶¶ 65–69.) This is properly viewed as a contract claim, not an educational malpractice claim, and the Court thus joins the numerous other courts who have rejected this same argument. *See Hickey*, 81 F.4th at 311; *Smith v. Univ. of Pa.*, 534 F. Supp. 3d 463, 471 (E.D. Pa. 2021) ("This is not a claim for educational malpractice. It is simply an action for breach of contract."); *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 273 (W.D. Pa. 2021) ("This Court concurs . . . with the significant majority of Courts across the country which have considered whether a similar post-pandemic claim should be precluded as a claim for educational malpractice and concluded it should not."); *Ninivaggi*, 555 F. Supp. 3d at 52 ("[T]his is not a malpractice suit. The students claim not that their education was bad, but that it breached a promise to provide a specific type of education."); *see also Jones*, 51 F.4th at 110 ("[T]he Students do not challenge the quality of the education received but allege that Tulane undertook a specific, identifiable agreement for the provision of particular services—that is, for the provision of in-person instruction and on-campus facilities."); *Hernandez v. Ill. Inst. of Tech.*, 63 F. 4th 661, 670 (7th Cir. 2023) (rejecting the argument that the plaintiff's claim was properly viewed as an education malpractice claim, and

finding that the plaintiff's claims "do not require us to evaluate the university's academic or educational judgment at all. Rather, [the plaintiff] asserts that he received 'a materially different product' than what he bargained for" (citation omitted)).[7]

### B. Breach of Contract and Impossibility

The Court turns next to Plaintiff's claim for breach of contract. At this stage, Defendant does not appear to be contesting that there is an implied contract between it and its students to provide an in-person education and an on-campus experience.[8] Instead, Defendant argues its

---

[7] Relying on *Swartley v. Hoffner,* 734 A.2d 915 (Pa. Super. Ct. 1999), Defendant also asserts that in this context, to support a breach of contract claim, a plaintiff must identify a "specific written contract provision" that was breached. (Doc. No. 12-1 at 11.) But the Third Circuit in *Hickey* rejected the argument that *Swartley* foreclosed an implied breach of contract claim in this context, finding that the *Swartley* court "did not wholly exempt universities from the hornbook rule that contracts may be implied in fact" and "did not preclude breach of contract claims by students who, unlike Swartley, allege specific promises their universities broke—even if those promises have not been reduced to writing." *Hickey*, 81 F.4th at 311.

[8] In passing, Defendant "denies there was any contract to provide in-person education" under these circumstances. (Doc. No. 12-1 at 8.) But Defendant does not meaningfully explain why it contends no contract exists and instead, spends the bulk of its analysis assuming that a contract exists. (*Id.* at 9.) To the extent Defendant intended to argue that no implied contract exists, the Court finds that argument foreclosed by *Hickey*. In *Hickey* the Third Circuit found that the plaintiffs adequately pled the existence of an implied contract between the universities and their students to provide in-person, on-campus instruction premised on three university practices: (1) "frequent references to in-person instruction in university publications;" (2) "the schools' tradition of in-person instruction;" and (3) "online education [being offered as] a product separate and distinct from in-person education . . . at a lower cost." 81 F.4th at 312–13. Here, the Complaint adequately alleges that Defendant conducted most of these practices. First, as noted above, the Complaint is with replete with allegations that Defendant's marketing materials emphasize the importance of the on-campus experience, highlight the various services and on-campus locations available, and boast about the campus's location. (Doc. No. 1 at ¶¶ 27–34.) Second, the Complaint alleges that Defendant had a "longstanding tradition of offering its courses in face-to-face classroom settings on campus" and that it did not begin offering remote courses until the 2020–2021 academic year. (*Id.* at ¶ 23.) And finally, while the Complaint does not allege that there was a cheaper online education available, that alone does not prevent a finding of an implied contract and likely reflects that unlike the defendants in *Hickey*, Lincoln University did not offer an online degree. (*Id.* at ¶ 24); *see Faw v. Villanova Univ.*, No. CV 23-3897, 2024 WL 3237601, at *4 (E.D. Pa. June 28, 2024) ("[T]he presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages, but it does not necessarily follow that a differential between in-person and online classes is a necessary condition for plausibly alleging an implied contract for in-person courses and services." (quotation marks omitted)). Thus, the Court finds that, at this stage, Plaintiff has alleged sufficient facts to "support a reasonable inference that the parties impliedly contracted for in-person education." *Hickey*, 81 F.4th at 312–13.

performance under this implied contract was excused because such performance was rendered impractical by the pandemic and Governor Wolf's related emergency orders in March 2020 instructing all non-essential business to close.[9]  (Doc. No. 12-1 at 12–13.)

"Pennsylvania courts have adopted [the] doctrine of impracticability or impossibility as set forth in the Restatement (Second) on Contracts § 261."[10]  *In re Land Conservancy of Elkins Park, Inc.*, No. ADV 10-499, 2013 WL 504888, at *3 (E.D. Pa. Feb. 11, 2013); *see also Luber v. Luber*, 614 A.2d 771, 774 (Pa. Super. Ct. 1992) ("Legal impossibility or impracticability is defined in § 261 of the Restatement (Second) of Contracts.")  Section 261 provides:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261.  Impracticability is an affirmative defense and thus the Court can grant a motion to dismiss on this ground only when the defense is "apparent on the face of the complaint."  *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 830 (3d Cir. 2010); *see also Nouri v. Univ. of Scranton*, No. 3:23-CV-01362, 2024 WL 3871804, at *4 (M.D. Pa. Aug. 19, 2024) (describing impossibility as an affirmative defense).

At this stage, Defendant's argument that the COVID-19 pandemic and Governor Tom

---

[9] As previously noted, Defendant did not attach or reference any particular order in its brief, nor does it explain why the Court can consider this information at this stage.  *See supra* at 3 n.3.

[10] Defendant uses the term "impracticality," (Doc. No. 12-1 at 13), whereas Plaintiff uses the term "impossibility" (Doc. No. 13 at 10).  The Court understands that under Pennsylvania law, these terms refer to the same defense and thus the Court uses the terms interchangeably. *See O'Donnell v. Passport Health Commc'ns, Inc.*, No. CIV.A. 11-3231, 2013 WL 1482621, at *14 n.13 (E.D. Pa. Apr. 10, 2013), aff'd, 561 F. App'x 212 (3d Cir. 2014) (explaining the evolution of the defense from impossibility to impracticability); *Kalkreuth Roofing & Sheet Metal, Inc. v. W. Jefferson Hills Sch. Dist.*, 310 A.3d 1265 (Pa. Commw. Ct. 2023) (table) ("Impossibility of performance means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved." (quotation marks omitted)).

Wolf's executive proclamations "made in-person instruction legally impracticable and impossible" (Doc. No. 12-1 at 13) fails for two reasons. First, as other courts presented with an impossibility or impracticability defense in this context have held, these doctrines "at most excuse[] performance, but [they do] not entitle the party who had been obliged to perform to retain the benefit provided by the other party." *Faw*, 2024 WL 3237601 at *7 (alterations accepted and quotation marks omitted); *see also Ninivaggi*, 555 F. Supp. 3d at 53 (Bibas, J., circuit judge, sitting by designation) (permitting a breach of contract claim to go forward despite finding that it was impossible for the university to provide in-person classes and holding that "[i]f someone renders performance under the contract, but the contract is then excused because of a change of circumstances, he still has a claim in restitution as necessary to prevent unjust enrichment. So if the students prove that U. Delaware promised in-person classes, but the school shows that the promise was impossible to keep, the students might be able to recover restitution" (citations, quotation marks, and alterations omitted)); *Camden v. Bucknell Univ.*, No. 4:23-CV-01907, 2024 WL 760232, at *3 (M.D. Pa. Feb. 23, 2024) ("[T]he defense of impossibility at most only excuses *performance* of a contract. It does not entitle the party who had been obliged to perform—Bucknell—to retain the benefit provided by the other party—Camden's tuition." (quotation marks omitted)); *Nouri*, 2024 WL 3871804, at *7 ("[C]ourts in this Circuit have recognized an impossibility defense at most only excuses performance of a contract, and does not permit either party to retain benefits conferred upon it by the other party." (quotation marks omitted)); *Meng v. New Sch.*, 686 F. Supp. 3d 312, 320 (S.D.N.Y. 2023) ("TNS's impossibility defense would not relieve it of its obligation to return any portion of the tuition or fees plaintiff paid to which the university is not entitled."); *cf. Davis v. Borough of Montrose*, 194 A.3d 597, 608–09 (Pa. Super. Ct. 2018) ("[A] party who has already performed under a contract, which is

dissolved on the ground of supervening impracticability, is generally allowed a claim for restitution to the extent his performance has benefited the other party."). In other words, while the pandemic and related government orders may have permitted Defendant to stop providing the promised, in-person education, it does not permit them to retain all tuition and fees paid for that experience. Thus, Plaintiff is permitted to proceed on the breach of implied contract claim and seek restitution in the form of the prorated tuition and fees, notwithstanding Defendant's impossibility or impracticability defense. *Cf. TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 289 (E.D. Pa. 2011) ("[E]ven where an enforceable contract exists, under certain circumstances courts will allow restitution as an alternative remedy for a breach of the contract.").

Second, the Court finds that it would be premature to dismiss Plaintiff's claim on impracticability or impossibility grounds. While the pandemic and corresponding governmental orders may have made it impossible for Defendant to provide in-person education at some points during the spring 2020 semester, Defendant has not shown that was this was true for the entirety of the semester. *See Faw*, 2024 WL 3237601, at *7 ("[T]here are unresolved questions of fact regarding whether the stay-at-home mandate prevented in-person classes for the entire semester. Additional discovery is necessary to clarify the extent to which Villanova was legally barred from performing its alleged contractual obligations."); *Nouri*, 2024 WL 3871804, at *7 (noting that resolution of the impossibility defense is "better determined after discovery, as discovery is necessary to clarify the extent to which the University was legally barred from performing its alleged contractual obligations" (quotation marks and alterations accepted)); *Meng*, 686 F. Supp. 3d at 320 ("[W]hile it is determinable from the face of the complaint and judicially noticeable documents—such as the New York governor's executive orders—that it was impossible for TNS

to hold in-person classes for some portion of the Spring 2020 semester, it is not clear that it was impossible to hold classes for the entire second half of the spring semester.  For example, as COVID-19 waves ebbed and flowed, the comparative strictness of the government's lockdown orders, and associated capacity limits, may have changed.  It is a factual question beyond the scope of a motion to dismiss whether at some point in this period the school could have reopened but wrongfully declined to do so."); *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1158–59 (S.D. Fla. 2020) ("Although the existence of COVID-19 is generally known and cannot reasonably be questioned, that does not conclusively establish the defense of impossibility or frustration of purpose on the facts alleged, particularly given the overlapping and sometimes contradictory state and local regulations, and evolving standards, for dealing with the virus."); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("To begin, it is unclear from the face of the complaint whether COVID-19 rendered it physically impossible to provide in-person instruction and on-campus services.").  Thus, while Defendant may have a strong defense later in this litigation, the Court finds that additional discovery is needed before we are able to conclude that full performance of its contractual obligations was impractical or impossible.[11]

---

[11] Defendant cites *Burt v. Board of Trustees of the University of Rhode Island*, 84 F.4th 42 (1st Cir. 2023), where the United States Court of Appeals for the First Circuit dismissed the plaintiff-students' claim for breach of contract based on an impossibility defense. (Doc. No. 12-1 at 17.)  Significantly, however, that opinion affirmed dismissal at the *summary judgment* stage, where the parties had the benefit of discovery.  Defendant also cites *School Express, Inc. v. Upper Adams School Dist.*, 292 A.3d 622 (Pa. Commw. Ct. 2023), in which the Pennsylvania Commonwealth Court affirmed the dismissal, through a motion for judgment on the pleadings, of a transportation company's breach of contract claim against a school district on grounds of impossibility.  (*Id.*)  However, the Court finds the cases cited above, which dealt with an identical situation to the case at bar, more persuasive than *School Express*, which arose in a slightly different context.  In particular, *School Express* did not involve a situation where one side had already completely performed under the contract, such as here where the students already paid their tuition and fees.  Instead, it involved an allegation that the school district refused to pay its invoices to a bus company for the "days in which schools were not open or in session."  *Sch. Express*, 292 A.3d at 622 (table).

In sum, the Court finds that it is inappropriate to dismiss Plaintiff's claim for breach of contract on grounds of impracticability or impossibility. Thus, the Court will deny Defendant's motion to dismiss on this ground.[12]

### C. Unjust Enrichment

The Court turns now to Plaintiff's claim for unjust enrichment. Under Pennsylvania law, "[t]he elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203–04 (Pa. Super. Ct. 1999).

Defendant does not appear to contest that the first two prongs are met, and instead, asserts that this claim must be dismissed under the third prong for two reasons. First, Defendant argues that Plaintiff has not "allege[d] any facts which plausibly suggest it was unconscionable and unjust for Defendant to retain Plaintiff's full tuition and [mandatory] fee payments for the Spring 2020." (Doc. No. 12 at 15.) But in support of this claim, Plaintiff alleges that Defendant "was unjustly enriched by retaining a portion of the tuition or Mandatory Fees during the period

---

[12] Defendant also refers to the doctrine of frustration of purpose. (Doc. No. 12-1 at 12–13.) "Frustration of purpose and impossibility are closely related concepts." *See O'Donnell*, 2013 WL 1482621, at *14 n.13. Under the doctrine of frustration of purpose, "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 412 (Pa. Super. Ct. 2010) (quoting Restatement (Second) of Contracts § 265). Defendant does not meaningfully argue why this defense, as opposed to impracticability, is applicable here. However, to the extent Defendant intended to raise this argument, it fails for the same reasons noted above: a frustration purpose defense does not prevent the plaintiff from seeking restitution, *Hart v. Arnold*, 884 A.2d 316, 335 (Pa. Super. Ct. 2005) (citing Restatement (Second) of Contracts § 272 Cmt. b.); *Omori v. Brandeis Univ.*, 635 F. Supp. 3d 47, 57 (D. Mass. 2022) ("Even if impossibility and/or frustration of purpose were to excuse Brandeis' non-performance, the doctrines forgive performance by both parties to a contract. If one party has performed, as the plaintiffs here did by paying **full tuition**, the non-performing party may owe it restitution" (emphasis in original)), and it is too early for the Court to conclusively determine whether this defense is satisfied.

of time Lincoln was closed during the Spring 2020 semester" and that "as a result of closing campus and moving classes online, Lincoln saved significant sums of money in the way of reduced utility costs, reduced staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work student students, and otherwise." (Doc. No. 1 at ¶¶ 57, 78; *see also id.* at ¶ 12 ("It is unfair and unlawful for Lincoln to retain tuition for campus-based in-person education and services not being provided and to pass the financial losses on to its students.").) The Third Circuit in *Hickey* found similar allegations sufficient to support a claim for unjust enrichment claim:

> The Students allege that the Universities retained considerable cost savings—at Students' expense—by transitioning to remote learning. While the Universities, joined by amici American Council on Education, contend that they did not profit from the pandemic—and to the contrary, "incurred tremendous and unexpected costs,"—we will not resolve that factual question at the motion-to-dismiss stage. . . . [T]he law here tracks common sense: "If the school saved money by substituting online for in-person classes, it might have to give those savings back to the students."

*Hickey*, 81 F.4th at 316 (quoting *Ninivaggi*, 555 F. Supp. 3d at 53). While Defendant claims that Plaintiff's allegation of these savings is mere speculation and that the University in fact faced several "significant cost[s]" as a result of transitioning to an exclusively online format (Doc. No. 12-1 at 16), Plaintiff does not need to prove that Defendant saved money at the motion to dismiss stage. Instead, the Court finds, as the Third Circuit did in *Hickey*, that this is a factual dispute that is best reserved until after Plaintiff has had the benefit of discovery. 81 F.4th at 316; *Faw*, 2024 WL 3237601, at *8 ("This Court must apply the Third Circuit's holding in *Hickey*, which applies squarely to the facts alleged here: specifically, that a plaintiff may plausibly allege an unjust enrichment claim by pleading that a university inequitably retained tuition and fee payments despite having transitioned to remote learning during the COVID-19 pandemic.");

15

*Nouri*, 2024 WL 3871804, at *9 ("Plaintiff alleges that 'as a result of closing campus and moving classes online, Scranton saved significant sums of money.' Other courts have held that this allegation is sufficient for an unjust enrichment claim to survive a motion to dismiss. While the parties dispute whether the University profited from the transition to online learning, that is a factual question that cannot yet be resolved." (citations omitted)); *Camden*, 2024 WL 760232, at *4 ("Just as in *Hickey*, Camden has adequately alleged that Bucknell 'retained considerable cost savings—at [Bucknell] Students' expense—by transitioning to remote learning.'").

Second, Defendant argues that "Plaintiff has not alleged facts to show that equity and good conscience require repayment" because all colleges were required to pivot to online-only courses during the pandemic and that their "monumental effort to rapidly transition" should be acknowledged. (*See* Doc. No. 12-1 at 19.) But *Hickey*, again, forecloses this argument:

> [We will not] accept the Universities' invitation to affirm based on the correctness of their decisions to shut down campus. The Students do not claim it was unjust for the Universities to decide to move classes and services online, but, having done so, that it was unjust for the Universities not to refund their tuition or fees even partially. And they might be right if they prove their allegations . . . . The Students' allegations are thus sufficient to survive a motion to dismiss.

*Hickey*, 81 F.4th at 316. Here too, Plaintiff is explicitly not challenging Defendant's "discretion in adhering to federal, state, and local health guidelines," or their decision to move to an exclusively online format, but instead, is challenging Defendant's decision to retain tuition and fees paid for an in-person education that was not provided. (Doc. No. 1 at ¶ 13.) And applying *Hickey*'s reasoning, although Defendant made a considerable effort to efficiently transfer to an online education when confronted with the realities of the pandemic, Plaintiff has adequately alleged that it is unjust for Defendant to refuse to refund the tuition and fees while retaining all of the savings generated from remote-only learning.

In sum, the Court finds, in accordance with *Hickey*, that Plaintiff has adequately pled a claim for unjust enrichment. Thus, the Court will deny Defendant's motion to dismiss as to this claim.[13]

### D.     Attorney's Fees

Finally, Defendant moves to strike Plaintiff's request for attorney's fees. Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which allows a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although the "court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," *N. Penn. Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994) (quotation marks omitted), "motions to strike are generally viewed with disfavor," *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993); *see also United States v. Marisol*, 725 F. Supp. 833, 836 (M.D. Pa. 1989) ("Motions to strike are often viewed with disfavor because of their potential to be used as a dilatory tactic."). Indeed, a motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice." *N. Penn. Transfer*, 859 F. Supp. at 158 (quotation marks omitted); *see also Wilson v. King*, Civ. A. No. 06-CV-2608, 2010 WL 678102, at *4 (E.D. Pa. Feb. 24, 2010) ("[E]ven if a motion to strike is technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party."). *But see Marisol*, 725 F. Supp. at 836 (noting that although motions to strike are disfavored, "they do serve a useful

---

[13] The Court notes that a claim for unjust enrichment cannot stand when a contract governs the parties' relationship. *Hickey*, 81 F.4th at 315. However, "the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where, as here, the existence or applicability of a contract is in dispute." *Id.* The Court therefore will permit Plaintiff to proceed on both claims at this time. *See Nouri*, 2024 WL 3871804, at *9 ("While Pennsylvania law prohibits unjust enrichment claims when the parties' relationship is governed by an express or implied contract, the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where the existence or applicability of a contract is in dispute." (quotation marks omitted and alterations accepted)).

purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case").

Here, the Court finds that Defendant's motion to strike Plaintiff's request for attorney's fees is premature.  In asserting that Plaintiff's claim for attorney's fees should be stricken with prejudice, Defendant asserts that "Pennsylvania follows the 'American Rule,' under which 'a litigant cannot recover counsel fees from an adverse party.'"  (Doc. No. 12-1 at 16) (citing *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 244 (Pa. 2024) (internal citation omitted)).  However, as Defendant acknowledges, there are exceptions to this general rule.  (*Id.* at 17); *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 976 A.2d 474, 482–83 (2009) ("[A] litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or *some other established exception*." (emphasis added)).  One such exception is the "common fund doctrine" which "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("The 'common fund exception,' . . . allows a court to award attorney's fees to a party whose litigation efforts directly benefit others.").  Here, at this early stage of litigation, the Court cannot yet determine whether Plaintiff's case may fall within the common fund doctrine or some other established exception.  *See Meehan v. Roadmaster Drivers Sch., Inc.*, No. 2:22-CV-04299-JMG, 2023 WL 4089360 at *5 (E.D. Pa. June 20, 2023) ("[A]t such an early stage in the proceedings . . . , it would be impossible to determine whether an award of attorney's fees would be appropriate as to Plaintiffs' claims for breach of contract and unjust enrichment.").  For example, if "the class [in this matter] were certified and the

litigation ultimately resulted in a common fund benefiting unnamed class members, [the Court] could award attorneys' fees." *Bell v. Surv. Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), 2017 WL 1013294, at *8 (D. Conn. Mar. 15, 2017) (denying motion to strike request for attorney's fees for a claim under the TCPA, which does not provide for attorney's fees, because the plaintiff could satisfy the common fund exception later in litigation); *Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), 2017 WL 2838075, at *8 (D. Conn. June 30, 2017) (same); *cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) (providing that the common fund exception is satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf"). Additionally, Defendant has not articulated any prejudice that it would endure if the Court were to permit Plaintiff to proceed on their request for attorney's fees at this stage. *See, e.g.*, *Donnelly v. Commonwealth Fin. Sys., Inc.*, No. 3:07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008) ("Courts have required that the moving party demonstrate prejudice before the court will strike a pleading."). Thus, the Court finds Defendant's request premature. Defendant should, nevertheless, take solace in the fact that the Court will ultimately not award any attorney's fees that are not permitted by law.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is denied in its entirety. An appropriate Order follows.