## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BENITA DIXON,** *individually and on behalf of all others similarly situated*, | **CIVIL ACTION** |
| Plaintiff, | **NO. 24-1057-KSM** |
| *v.* | |
| **LINCOLN UNIVERSITY,** | |
| Defendant. | |

## <u>MEMORANDUM</u>

**Marston, J.**                                                                                    **May 12, 2025**

      This is a putative class action brought by Plaintiff Benita Dixon against Defendant Lincoln University ("Lincoln").  (*See* Doc. No. 1.)  Plaintiff, a former Lincoln student, alleges that Lincoln breached an implied contract with its students and was unjustly enriched because, in response to the COVID-19 pandemic, it closed its campus and offered only remote instruction during the Spring 2020 semester.  (*Id.*)  Presently before the Court is Plaintiff's motion for preliminary approval of the class action settlement, settlement agreement, and short- and long-form notices.  (Doc. Nos. 36, 36-1, 36-3.)  For the reasons below, the Court grants the motion and will schedule a final approval hearing.

## I.      Background

      Like many other colleges in March 2020, Lincoln moved its classes online and shut down its campus in response to the COVID-19 pandemic.  (Doc. No. 1 at 2, 14–17.)  Plaintiff was an undergraduate student at Lincoln during this time, and on March 11, 2024, she filed this class action lawsuit against Lincoln.  (*Id.* at 5.)  Plaintiff alleges that she and her fellow students paid

tuition and fees to Lincoln in exchange for an in-person, on-campus educational experience and for access to campus services and facilities during the Spring 2020 semester.  (*Id.* at 6–14.)   But Lincoln allegedly did not live up to its end of the bargain because it closed campus services and facilities and offered only remote learning after March 12, 2020 for the remainder of the semester.  (*Id.* at 14–15.)   So, Plaintiff claims, Lincoln breached an implied contractual duty with its students and was unjustly enriched because it kept students' tuition and fees from the Spring 2020 semester.  (*Id.* at 22–26.)

In June 2024, Lincoln moved to dismiss Plaintiff's Complaint, but the Court denied Lincoln's motion.  (Doc. Nos. 12, 15–16.)   The parties then exchanged written discovery, and before their settlement conference with the Honorable Magistrate Judge Carol Sandra Moore Wells, they shared "detailed information related to the amount of tuition and fee payments made by or on behalf of the putative class members, as well as the size of the putative class."  (Doc. No. 36-1 at 9.)   With the help of Judge Wells, the parties reached a settlement in principle on January 7, 2025, and on March 28, 2025, Plaintiff filed an initial unopposed motion for preliminary approval of the class action settlement.  (*Id.* at 10; Doc. No 36.)   In the motion, Plaintiff includes the proposed settlement agreement and the proposed short- and long-form notices.  (Doc. No. 36-3 at 53–55, 56–65.)   On May 6, 2025, the Court held a hearing on the motion.  (Doc. No. 37.)

## II.    Preliminary Certification of the Class for Settlement Purposes

### A.    Legal Standard

The Court may certify class actions for the sole purpose of settlement.   *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010)

(citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)).   In these situations, the court provisionally certifies the class, but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."   *Id.*

When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23," and in particular Rule 23(a) and 23(b).   *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).   Under Rule 23(a), a class action is allowable only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").   Additionally, the class must be currently and readily ascertainable based on objective criteria.   *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012).   If the Rule 23(a) and ascertainability conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied.   *In re Cmty. Bank of N. Va.*, 418 F.3d at 300.

Here, Plaintiff seeks certification for a class under Rule 23(b)(3), which requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3); *see*

*also Reyes*, 802 F.3d at 482 (explaining that a plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

**B.    Analysis**

Plaintiff proposes the following class:

> All Lincoln University students enrolled in the Spring 2020 Semester for at least one in-person class who did not withdraw by March 12, 2020 for whom any amount of tuition or fees was paid to Lincoln from any source other than a scholarship, grant, or tuition remission from Lincoln, and whose tuition and/or fees have not been fully refunded.
>
> Excluded from the Potential Settlement Class are (i) any students who received full scholarships or tuition remission from Lincoln; (ii) Lincoln and its officers, trustees and their family members; and (iii) all persons who properly execute and file a timely opt-out request to be excluded from the Settlement Class.

(Doc. No. 36 at 1–2.)   This class is ascertainable and meets all six requirements of Rules 23(a) and 23(b)(3).   The Court addresses each in turn.

**1.    Ascertainability**

Plaintiff has the burden of showing, by a preponderance of the evidence, that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"   *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)).   The class here is ascertainable because the parties will determine the exact number and identities of class members through Lincoln's Registrar's records.   (Doc. No. 36-2 at 4.)

4

## 2.    Rule 23(a) Requirements

In addition to being ascertainable, the putative class must also satisfy the requirements of Rule 23(a): "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Reyes*, 802 F.3d at 482.

### Numerosity

While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Here, the proposed class is sufficiently numerous because it consists of over 1,600 people. (Doc. No. 36-2 at 2.) The Court is satisfied that the proposed class is large enough to render joinder impracticable. Fed. R. Civ. P. 23(a).

### Commonality

As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). It is "easy enough" to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution. *Id.* Commonality is met here because all class members' claims share several common questions of law or fact, including:

> (a) whether Defendant engaged in the conduct alleged [in the Complaint]; (b) whether there is a difference in value between online distance learning and live in-person instruction; (c) whether Defendant breached its contracts with Plaintiff and the other members of the Class by retaining tuition and fees without providing

5

the services the tuition and fees were intended to cover; (d) whether certification of the Class proposed herein is appropriate under Fed. R. Civ. P. 23; (e) whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and (f) the amount and nature of relief awarded to Plaintiff and the other Class Members.

(Doc. No. 36-1 at 26–27.)   Because the class members' claims share common questions of law and fact, the Court finds that commonality is met here.   *See In re Nat'l Football League Players*, 821 F.3d at 426–27.

*Typicality*

There is a "low threshold" for typicality.   *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001).   So long as "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.   *Id.*   The representative Plaintiff's claims are "virtually identical" to those of the class because all their claims "arise from the same conduct" of Defendant.   *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023).   Plaintiff and each class member enrolled as on-campus students at Lincoln for the Spring 2020 semester and paid tuition and fees, but they were allegedly deprived of the full benefit of their bargain when Lincoln transitioned to online learning and shut down campus.   (Doc. No. 36-1 at 27–28.)   Thus, typicality is met here.

*Adequacy of Representation*

Courts considering adequacy of representation examine both "the qualifications of class counsel and the class representatives."   *In re Nat'l Football League Players*, 821 F.3d at 428.

First, when considering the adequacy of class representatives, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named

6

parties and the class they seek to represent." *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate." *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)). Here, this requirement is satisfied because the representative Plaintiff has been active in this case by "reviewing the [C]omplaint, providing information and documentation, where available, to Class Counsel, and approving the Settlement and consenting to the submission of the proposed Settlement for the Court's approval." (Doc. No. 36-2 at 3.) And the Court discerns no conflict of interest between the representative Plaintiff and other potential class members—their interests are aligned in attempting to prove the factual averments in the Complaint and establishing Defendant's liability. (Doc. No. 36-1 at 28.)

Second, with respect to class counsel, the key factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re GMC*, 55 F.3d at 801. The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation. *See In re Nat'l Football League Players*, 821 F.3d at 429. Those factors include: counsel's work in the instant class action; experience in handling class actions or other kinds of complex litigation; knowledge of the applicable laws; and resources available for representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court also

"may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, the proposed class counsel—Nicholas Colella, Esquire and Anthony Alesandro, Esquire—are qualified to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Colella and Alesandro have substantial experience handling class litigation and have worked on many other COVID-19 college refund lawsuits. (*See* Doc. No. 36-2 at 5–6; Doc. No. 36-5.) And the parties worked with Judge Wells to facilitate arms' length negotiations, which weighs in favor of finding adequacy. *See Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 316722, at *6 (E.D. Pa. Jan. 24, 2019) (collecting cases). Thus, the Court finds that the proposed class's interests have been advanced by experienced, dedicated counsel, working at arms' length from Defendant in accordance with Rule 23(a)(4).

***

In sum, the Court finds that the Rule 23(a) conditions for class certification are met.

### 3.    Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the putative class must also satisfy Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

***Predominance***

The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

8

The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context." *In re Nat'l Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)). Here, predominance is satisfied. In this college refund lawsuit, Defendant's conduct was common to all class members, and all class members were harmed by that conduct. (Doc. No. 36-1 at 29–30.) Indeed, the central issue for each class member is the same—"whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with in-person, on-campus instruction, educational services, and use of facilities after March of 2020, yet retaining the tuition and fees paid for the same." (*Id.*) Thus, common questions of law and fact predominate over individual factual questions. *See Corra v. ACTS Ret. Servs., Inc.*, No. 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024) (holding that common questions predominated even though "there may be slight differences among class members regarding degree of damages or the exact type of injury suffered").

**Superiority**

The parties have also demonstrated the class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)). Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims." *Id.* (quoting *In re Nat'l Football*

*League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

Here, these factors weigh in favor of class litigation.   With over 1,600 potential class members and considering the "cost and complexity of the litigation," many potential plaintiffs would likely "have small claims that would be impractical to litigate on an individual basis." *Corra*, 2024 WL 22075, at \*5; *In re Wawa*, 2023 WL 6690705, at \*5.   (Doc. No. 36-2 at 2.) Plus, "where, as here, the Court is confronted with a request for settlement-only class certification, [the Court] need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Corra*, 2024 WL 22075, at \*5 (quoting *Amchem*, 521 U.S. at 620) (cleaned up).   So, superiority is met here.

\* \* \*

For these reasons, the Court finds that the requirements of Rules 23(a) and 23(b)(3) are satisfied, and the Court provisionally certifies the class.

## C.    Appointment of Class Representative

Appointment of class representatives is governed by Rule 23(a), which requires that their claims be "typical of the claims . . . of the class" and that they "will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(3)–(4).   For the reasons previously discussed in Part II.B.2, those requirements are met here, and so the Court will appoint Benita Dixon as a representative of the settlement class.

### D.    Appointment of Class Counsel

Rule 23(g) provides the standard for the appointment of class counsel.   Class counsel are responsible not just for representing the interests of the class representatives, but for "fairly and adequately represent[ing] the interests of the class."   Fed. R. Civ. P. 23(g)(4).   As discussed above in Part II.B.2, Rule 23(g) provides a non-exclusive list of factors courts should consider when appointing class counsel.   For the reasons previously discussed, the Court finds that Nicholas Colella, Esquire and Anthony Alesandro, Esquire have the ability and resources to "fairly and adequately represent the interests of the class."   *Id.*   Accordingly, they will be appointed as class counsel.

## III.    Preliminary Approval of the Settlement Agreement

The parties also ask the Court to preliminarily approve their settlement agreement, which was negotiated at arm's length with the assistance of Judge Wells.   (*See generally* Doc. No. 36.)

### A.    Settlement Agreement

As noted above, the proposed settlement class consists of "[a]ll Lincoln University students enrolled in the Spring 2020 Semester for at least one in-person class who did not withdraw by March 12, 2020 for whom any amount of tuition or fees was paid to Lincoln from any source other than a scholarship, grant, or tuition remission from Lincoln, and whose tuition and/or fees have not been fully refunded."   (Doc. No. 36-3 at 11–12.)   The settlement class excludes "(i) any students who received full scholarships or tuition remission from Lincoln; (ii) Lincoln and its officers, trustees and their family members; and (iii) all persons who properly execute and file a timely opt-out request."   (*Id.* at 12.)   The settlement requires Defendant to create a $169,500 non-revisionary settlement fund that will first be used to pay for administrative

expenses, taxes, any service award,[1] and any fee award and costs.[2]   The remaining funds, the "Net Settlement Fund," will be distributed equally to the class members.   (*Id.* at 27.)   Class members who do not opt out of the settlement will receive a check in the mail sent to their last known permanent address on file with Lincoln's Registrar unless they elect to receive the settlement benefit via Venmo or PayPal.   (*Id.* at 16.)   Any unclaimed funds will "be returned to Lincoln to be paid into a financial aid fund for Lincoln students."   (*Id.* at 16–17.)   This financial aid fund will be used to lower the cost of tuition for future Lincoln students.

The parties selected RG/2 Claims Administration, LLC ("RG/2") as the Settlement Administrator.   (*Id.* at 13.)   Within fourteen days of this Court's preliminary approval of the class settlement, Lincoln will produce the names, email addresses, and mailing addresses of each potential class member to RG/2.   (*Id.* at 19.)   Pursuant to the settlement agreement, RG/2 will email the short-form notice and election form to potential class members.   (*Id.*)   If an email address is not available for a potential class member, RG/2 will mail the short-form notice via U.S. mail to the last known mailing address of that potential class member.   (*Id.* at 19–20.)   In addition, RG/2 will establish a settlement website within 45 days of the preliminary approval of the class settlement.   (*Id.* at 20–21.)   The website will allow class members to update their address and change how they receive their settlement benefit, and it will contain the long-form notice, preliminary approval hearing Order, and settlement agreement.   (*Id.* at 21.)

---

[1] Plaintiff suggests a service award of up to $2,500 for the representative Plaintiff, for which they will separately petition the Court for approval.   (Doc. No. 36-3 at 32.)   The settlement is not conditioned on the Court's award of any service award.   (*Id.* at 33.)

[2] Plaintiff intends to separately file a motion for an award of attorneys' fees for up to 33.3% of the settlement fund and for reasonable costs.   (Doc. No. 36-3 at 32.)   The settlement is not conditioned on the Court's award of any attorneys' fees or costs.   (*Id.* at 33.)

The short-form notice to be sent to the class describes the nature of the dispute and the settlement benefit, explains who the class members are and how class members can exclude themselves from or object to the settlement, and informs class members of the time and location of the final fairness hearing.   (*Id.* at 53–54.)   The long-form notice, to be posted to the settlement website, includes additional related information, such as detailed descriptions of class members' legal rights, descriptions of how the settlement benefit will be paid, information about class counsel, and an explanation about attorneys' fees and the service award to the class representative.   (*See id.* at 56–65.)   Both the short- and long-form notices explain that class members will have 45 days from when RG/2 notifies the class of the settlement to object to or opt out of the settlement.   (*See id.* at 53–65.)

If this settlement is approved, class members who do not exclude themselves from the settlement will be deemed to have forever released the following claims:

> any and all causes of action, suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, covenants, contracts, losses, expenses, liens, demands, judgments, costs, damages, obligations, and all other legal responsibilities in any form or nature, including, without limitation, all claims relating to or arising out of any state, local, or federal statute, ordinance, rule, regulation, or public policy, and any other claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, arising out of or in any way allegedly related to (i) tuition or mandatory fees paid at Lincoln in connection with the Spring 2020 semester, or (ii) the Action, or (iii) Lincoln's transition to remote education with respect to the COVID-19 pandemic, or the implementation or administration of such remote education during the Spring 2020 semester. This includes, without limitation, all claims that were brought or could have been brought in the Action.

(*Id.* at 12, 17–18.)   These claims are released against:

> Lincoln and any present, future, and former parent, subsidiary, division, college, school, center, department, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and each of the foregoing's respective present, future, and former officers, directors, trustees, academic affiliates, administrators, employees, faculty members, students, agents, representatives, attorneys, outside counsel, insurers and re-insurers, predecessors, successors, and assigns.

(*Id.* at 12–13, 17–18.)

## B.    Fair, Reasonable, and Adequate Settlement

Preliminary approval of a proposed class action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is "likely" to be approved under Rule 23(e)(2).   Fed. R. Civ. P. 23(e)(1)(B)(i); *see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").   Under Rule 23(e)(2), a settlement must be "fair, reasonable, and adequate."   Fed. R. Civ. P. 23(e)(2).   To determine whether a settlement satisfies Rule 23(e)(2), the Court considers the factors outlined by the Third Circuit in *In re GMC*, *Girsh v. Jepson*, and *In re Pet Food*.

### 1.    The *GMC* Factors

The settlement is entitled to "an initial presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."   *In re GMC*, 55 F.3d at 785.   But where, as here, the parties seek settlement approval and class certification simultaneously, the Court must examine the fairness of the

14

settlement "even more scrupulous[ly] than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

Here, after reviewing the motion, settlement agreement, and short- and long-form notices, the Court is satisfied that the proposed settlement meets the criteria for preliminary approval. The settlement agreement is entitled to an initial presumption of fairness because:   (1) the parties negotiated the settlement at arms' length with the assistance of Judge Wells (Doc. No. 36-1 at 17–18), (2) prior to reaching a settlement, the parties exchanged "written discovery" and provided each other with "detailed pre-settlement conference submissions setting forth their respective views on the merits of the case, the likelihood the case could be certified as a class action, the bona fides of the Named Plaintiff to represent the putative class, and positions on the factual support for and viability of the claims asserted in the Complaint" (*id.* at 9–10), and (3) class counsel, as described above, have significant experience in similar litigation (*see supra* Section II.B.2).   Because a class has not yet been certified, the fourth factor—the fraction of class members objecting to the settlement—cannot be evaluated at this point.   Thus, on balance, the *GMC* factors weigh in favor of preliminary approval such that an initial presumption of fairness attaches.

### 2.    The *Girsh* Factors

Though the settlement is entitled to an initial presumption of fairness, the Court must consider the following factors set forth by the Third Circuit in *Girsh v. Jepson* to confirm that it is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of

> establishing liability; (5) risk of establishing damages; (6) risk of
> maintaining the class action through the trial; (7) ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

521 F.3d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463

(2d Cir. 1974)) (cleaned up).[3]

The first factor—complexity, expense, and likely duration of the litigation—is met

because this "is a complex class action lawsuit" in "an area of law that has not yet been fully

developed." *In re Wawa*, 2023 WL 6690705, at *7.   And, if the litigation were to continue,

Plaintiff and the settlement class would face many challenges and expenses associated with class

action litigation, including obtaining class certification, briefing motions for summary judgment,

and maintaining class certification through trial. *Id.* (Doc. No. 36-1 at 21–22.)   Thus, the first

*Girsh* factor weighs in favor of approving the proposed settlement agreement.

The second factor—the reaction of the class to the settlement—is neutral because the

class has not yet received notice of the settlement.

The third factor—stage of the proceedings and the amount of discovery completed—

considers whether "counsel had an adequate appreciation of the merits of the case before

negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.   Here, Plaintiff's counsel

---

[3] The Court is mindful that Rule 23(e)(2) enumerates certain considerations for approving a class action settlement.   Since those factors substantially overlap with the *Girsh* factors and *In re Pet Food* factors, discussed *infra*, the Court does not separately address the 23(e)(2) factors.   *See Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *19 n.12 (E.D. Pa. Mar. 24, 2020) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that should apply in scrutinizing proposed class settlements, and the earlier discussion in *Girsh* substantially overlaps with the factors now identified in Rule 23.").

exchanged "written discovery" with defense counsel and provided defense counsel with a detailed submission that set forth their "view[ ] on the merits of the case, the likelihood the case could be certified as a class action, the bona fides of the Named Plaintiff to represent the putative class, and position[ ] on the factual support for and viability of the claims asserted in the Complaint." (Doc. No. 36-1 at 9–10.) So, while the case is "somewhat early in the litigation process," the Court finds that counsel "have adequately developed their case and engaged in a significant degree of case development." *In re Wawa*, 2023 WL 6690705, at *8 (holding that the third *Girsh* factor weighed in favor of approving settlement where the case was "somewhat early in the litigation process," because although the parties conducted only limited discovery, they exerted significant effort in the settlement negotiations). The third factor thus weighs in favor of approving the settlement.

The fourth and fifth factors—risks of establishing liability and damages—also weigh in favor of the settlement. Plaintiff's counsel explained that there is a risk of establishing liability, and in turn, damages, because this case involves an emerging area of the law, and there are risks associated with proving the existence of an implied contract as well as proving that Lincoln has been unjustly enriched. (Doc. No. 36-1 at 20–21.) So, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving the settlement.

The sixth *Girsh* factor—the likelihood of maintaining class certification if the action were to proceed to trial—weighs in favor of approval because there "will always be a 'risk' or possibility of decertification." *In re Prudential*, 148 F.3d at 321.

The seventh *Girsh* factor—the likelihood of Defendant to withstand a greater settlement—is "most clearly relevant where a settlement in a given case is less than would

ordinarily be awarded but the defendant's financial circumstances do not permit a greater

settlement." *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite

Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).   At the preliminary approval hearing, the

parties confirmed that Lincoln University has had some recent financial difficulties, which

makes the $100 per student recovery even more reasonable.   The Court thus finds that this factor

weighs in favor of approval.

Finally, the eighth and ninth factors—the range of reasonableness of the settlement fund

in light of the best possible recovery and in light of all the attendant risks of litigation—ask the

Court to consider "whether the settlement represents a good value for a weak case or a poor

value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.   Here, the

settlement is reasonable in light of the best possible recovery and attendant risks of litigation.

COVID-19 litigation is an emerging area of law, and there are risks with establishing both the

existence of an implied contract as well as the fact that that Lincoln has been unjustly enriched.

Plus, the monetary recovery per student of $100 is comparable to other class action settlement

involving college tuition refunds.   *See, e.g., Pfeifer et al v. Loyola Univ. of Chicago*, No. 1:20-

cv-3116 (N.D. Ill.) (approving a $1,375,000 million settlement with a per student recovery of

$88).   And this recovery is particularly reasonable here because the tuition for Lincoln's Spring

2020 semester "was only $4,000."   (Doc. No. 36-1 at 20.)   So, the Court finds that the final two

factors weigh in favor of approval.

### 3.    The *In re Pet Food* Factors

In addition to consideration of the *GMC* and *Girsh* factors, the Third Circuit has advised

that "when appropriate," "it may be helpful to expand the *Girsh* factors" to include non-

exclusive factors, such as:   "the maturity of the underlying substantive issues;" "the existence and probable outcome of claims by other classes and subclasses;" "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants;" "whether class or subclass members are accorded the right to opt out of the settlement;" "whether any provision for attorneys' fees are reasonable;" and "whether the procedure for processing individual claims under the settlement is fair and reasonable."   *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (quoting *In re Prudential*, 148 F.3d at 323).

Here, these factors also weigh in favor of approving the settlement.   In particular, though the Court reserves determination on the question for the final approval hearing, the provision for proposed attorneys' fees of no more than 33.3% of the settlement appears reasonable.   (Doc. No. 17-1 at 23.)   "Courts in the Third Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable."   *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (internal quotations omitted).   And, as discussed, class members are given the right to opt out of the settlement.   (*See* Doc. No. 63-3 at 53–65.)

* * *

In sum, the settlement agreement is fair, reasonable, and adequate, and does not otherwise reveal any deficiencies.   It is entitled to a presumption of fairness, and that presumption is supported by the *Girsh* and *In re Pet Food* factors.

19

**C.      Notice**

Last, the Court is satisfied that the form and content of the notice to the settlement class is adequate.   "The notice to the proposed class must be the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'"   *Katz v. DNC Servs. Corp.*, No. 16-5800, 2023 U.S. Dist. LEXIS 65901, at *7 (E.D. Pa. Apr. 14, 2023) (citing Fed. R. Civ. P. 23(c)(2)(B)).   The principles of due process "require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"   *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).   The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out.   *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

Here, the Court finds that the requirements of Rule 23 and due process are satisfied by the parties' proposed notice plan.   As discussed above, following preliminary approval of the class settlement, RG/2 will send the short-form notice to the class via email or direct mail and establish a dedicated settlement website.   (Doc. No. 36-3 at 19–20.)   The short-form notice describes the nature of the dispute and the settlement benefit, explains who the class members are and how class members can exclude themselves from or object to the settlement, and informs class members of the time and location of the final fairness hearing.   (*Id.* at 53–54.)   The long-form notice, to be posted to the settlement website, includes additional information, such as detailed descriptions of class members' legal rights, descriptions of how the settlement benefit

20

will be paid, information about class counsel, and an explanation about attorneys' fees and a service award to the class representative.   (*See id.* at 56–65.)   As written, the proposed notice will ensure that "interested parties [are apprised] of the pendency of the action and afford them an opportunity to present their objections."   *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

* * *

For these reasons, the Court grants preliminary approval of the class action settlement.

## IV.    CONCLUSION

The parties' proposed settlement was negotiated by experienced counsel with the assistance of Judge Wells.   The settlement gives class members a significant benefit.   The Court is satisfied that preliminary approval is appropriate, and so the Court grants Plaintiff's motion.   A fairness hearing is scheduled for September 15, 2025, at 10:30 a.m.

An appropriate Order follows.

21