**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BENITA DIXON,** *individually and on behalf of all others similarly situated*, | **CIVIL ACTION** |
| Plaintiff, | **NO. 24-1057-KSM** |
| *v.* | |
| **LINCOLN UNIVERSITY,** | |
| Defendant. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                    **September 18, 2025**

This is a putative class action brought by Plaintiff Benita Dixon against Defendant Lincoln University ("Lincoln").  (*See* Doc. No. 1.)  Plaintiff, a former Lincoln student, alleges that Lincoln breached an implied contract with its students and was unjustly enriched because, in response to the COVID-19 pandemic, Lincoln closed its campus and offered only remote instruction during the Spring 2020 semester.  (*Id.*)  Plaintiff, on behalf of a putative class, and Lincoln have negotiated a settlement agreement to resolve the allegations in the Complaint.

On May 12, 2025, the Court granted Plaintiff's motion for preliminary approval of the class and settlement agreement.  (Doc. Nos. 42, 43.)  Plaintiff now seeks final approval of the class and settlement agreement.  (Doc. No. 45.)  In addition, Plaintiff seeks approval of attorneys' fees, reimbursement of expenses to class counsel, and a service award to the named Plaintiff as the class representative.  (Doc. No. 44.)  For the reasons below, the Court will approve the terms of the settlement agreement and grant the motion for attorneys' fees, reimbursement of expenses, and a reduced service award.

## I.    Background

### A.    Procedural Background

Like many other colleges in March 2020, Lincoln moved its classes online and shut down its campus in response to the COVID-19 pandemic.   (Doc. No. 1 at 2, 14–17.)   Plaintiff was an undergraduate student at Lincoln during this time, and on March 11, 2024, she filed this class action lawsuit against Lincoln.   (*Id.* at 5.)   Plaintiff alleges that she and her fellow students paid tuition and fees to Lincoln in exchange for an in-person, on-campus educational experience and for access to campus services and facilities during the Spring 2020 semester.   (*Id.* at 6–14.)   But Lincoln allegedly did not live up to its end of the bargain because pursuant to government mandates, it closed campus services and facilities on March 12, 2020 and offered only remote learning for the remainder of the semester.   (*Id.* at 14–15.)   So, Plaintiff claims, Lincoln breached an implied contractual duty with its students and was unjustly enriched because it kept tuition and fees from students for the Spring 2020 semester.   (*Id.* at 22–26.)

In June 2024, Lincoln filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 12), and Plaintiff filed a response in opposition (Doc. No. 13).   Three months later, the Court denied Lincoln's motion.   (Doc. Nos. 15, 16.)   The parties then exchanged written discovery, and before their settlement conference with the Honorable Magistrate Judge Carol Sandra Moore Wells, they shared "detailed information related to the amount of tuition and fee payments made by or on behalf of the putative class members, as well as the size of the putative class."   (Doc. No. 36-1 at 9.)

With the help of Judge Wells, the parties reached a settlement in principle on January 7, 2025.   (*Id.* at 10.)   On March 28, 2025, Plaintiff filed an unopposed motion for preliminary

2

approval of the class action settlement.   (Doc. No 36.)   In the motion, Plaintiff included the

proposed settlement agreement as well as the proposed short- and long-form notices.   (Doc. No.

36-3 at 53–55, 56–65.)   After holding a preliminary approval hearing on May 6, 2025, the Court

granted preliminary settlement approval, preliminarily certified a Rule 23 class, and authorized

the settlement administrator to notify the class of the settlement.   (Doc. No. 43.)

On July 25, 2025, Plaintiff filed a motion for attorneys' fees, reimbursement of expenses,

and a service award for the class representative.   (Doc. No. 44.)   One month later, Plaintiff filed

a motion for final approval of the class and settlement agreement.   (Doc. No. 45.)   The Court

held a final approval hearing with counsel on September 15, 2025.   No class members attended

the hearing.

## B.    Settlement Agreement

The settlement agreement identifies the following settlement class:

> All Lincoln University students enrolled in the Spring 2020
> Semester for at least one in-person class who did not withdraw by
> March 12, 2020 for whom any amount of tuition or fees was paid to
> Lincoln from any source other than a scholarship, grant, or tuition
> remission from Lincoln, and whose tuition and/or fees have not been
> fully refunded.
>
> Excluded from the . . . Settlement Class are (i) any students who
> received full scholarships or tuition remission from Lincoln;
> (ii) Lincoln and its officers, trustees and their family members; and
> (iii) all persons who properly execute and file a timely opt-out
> request to be excluded from the Settlement Class.

(Doc. No. 36-3 at 11–12.)   The settlement requires Lincoln to create a $169,500 settlement fund

that will first be used to pay for administrative expenses, taxes, any service award, and any fee

award and costs related to this litigation.   (*Id.* at 13, 27.)   The remaining funds, the "Net

Settlement Fund," will be distributed equally to the class members.   (*Id.* at 16, 27.)   Class

3

members will receive a check in the mail sent to their last known permanent address on file with Lincoln's Registrar unless they elected to receive the settlement benefit via Venmo or PayPal. (*Id.* at 16.)   Any unclaimed funds will "be returned to Lincoln to be paid into a financial aid fund for Lincoln students."   (*Id.* at 16–17.)

### C.    Notice

After the Court appointed RG/2 Claims Administration, LLC ("RG/2") as the Settlement Administrator (Doc. No. 43 at 3), Lincoln sent RG/2 a list of the names and last known email and postal addresses of all settlement class members (Doc. No. 45-3 at 2).   In total, there were 1,695 settlement class members.   (*Id.*)   On June 26, 2025, RG/2 successfully emailed the short-form notice to 1,470 class members.   (*Id.* at 3.)   For the 225 class members without a valid email address, RG/2 mailed the short-form notice to them via first class mail.   (*Id.*)   Through email and first-class mail, RG/2 was able to send the short-form notice to all but 8 members of the settlement class.   (*Id.* at 4.)   Accordingly, RG/2 calculates that 99.53% of the settlement class was successfully notified.   (*Id.*)   In addition to emailing and mailing the short-form notice, RG/2 also established a settlement website, which contained the settlement agreement, the long-form notice, the preliminary approval Order, and an election form that allowed class members to update their address and change how they receive their settlement benefit.   (*Id.* at 3.)   Although no-opt outs or objections were filed, 242 election forms were completed through the website.[1] (*Id.* at 4.)

---

[1] At the final approval hearing, class counsel confirmed that RG/2 ultimately received more than 250 election forms through the settlement website, but there were still no opt outs or objections.

4

**D.     Release**

If this settlement is approved, class members who did not exclude themselves from the

settlement will be deemed to have forever released the following claims:

> any and all causes of action, suits, claims, controversies, rights,
> agreements, promises, debts, liabilities, accounts, reckonings,
> covenants, contracts, losses, expenses, liens, demands, judgments,
> costs, damages, obligations, and all other legal responsibilities in
> any form or nature, including, without limitation, all claims relating
> to or arising out of any state, local, or federal statute, ordinance, rule,
> regulation, or public policy, and any other claim at common law or
> in equity, whether past, present, or future, known or unknown,
> asserted or unasserted, arising out of or in any way allegedly related
> to (i) tuition or mandatory fees paid at Lincoln in connection with
> the Spring 2020 semester, or (ii) the Action, or (iii) Lincoln's
> transition to remote education with respect to the COVID-19
> pandemic, or the implementation or administration of such remote
> education during the Spring 2020 semester. This includes, without
> limitation, all claims that were brought or could have been brought
> in the Action.

(Doc. No. 36-3 at 12, 17–18.)   These claims are released against:

> Lincoln and any present, future, and former parent, subsidiary,
> division, college, school, center, department, and affiliated
> corporations and entities, the predecessors and successors in interest
> of any of them, and each of the foregoing's respective present,
> future, and former officers, directors, trustees, academic affiliates,
> administrators, employees, faculty members, students, agents,
> representatives, attorneys, outside counsel, insurers and re-insurers,
> predecessors, successors, and assigns.

(*Id.* at 12–13, 17–18.)

**II.     Final Certification of the Class for Settlement Purposes**

**A.     Legal Standard**

The Court may certify class actions for the sole purpose of settlement.   *In re*

*CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010)

(citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir.

1995)).   When parties present the court with a class settlement agreement, the court must first

determine whether the requirements for class certification under Rules 23(a) and 23(b) are met,

and separately determine whether the settlement is fair, reasonable, and adequate.   *Then v. Great*

*Arrow Builders, LLC*, 2:20-CV-00800-CCW, 2022 WL 562807 at *1 (W.D. Pa. Feb. 23, 2022)

(citing *In re Nat'l Football Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)).

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure set forth the requirements

for class certification.   Under Rule 23(a), a class action is allowable only if:

> (1) the class is so numerous that joinder of all members is
> impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All

potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation.").   Plus, the class must be

currently and readily ascertainable based on objective criteria.   *Marcus v. BMW of N. Am. LLC*,

687 F.3d 583, 593 (3d Cir. 2012).

If the Rule 23(a) and ascertainability conditions are met, a case may proceed as a class

action if one of the conditions of Rule 23(b) is also satisfied.   Here, Plaintiff seeks class

certification under Rule 23(b)(3), which requires that "the court find[ ] that the questions of law

or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."    Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482

(explaining that plaintiff must demonstrate "predominance and superiority" for certification

under Rule 23(b)(3)).

### B.    Analysis

Plaintiff proposes the following class:

> All Lincoln University students enrolled in the Spring 2020
> Semester for at least one in-person class who did not withdraw by
> March 12, 2020 for whom any amount of tuition or fees was paid to
> Lincoln from any source other than a scholarship, grant, or tuition
> remission from Lincoln, and whose tuition and/or fees have not been
> fully refunded.
>
> Excluded from the Potential Settlement Class are (i) any students
> who received full scholarships or tuition remission from Lincoln;
> (ii) Lincoln and its officers, trustees and their family members; and
> (iii) all persons who properly execute and file a timely opt-out
> request to be excluded from the Settlement Class.

(Doc. No. 36-3 at 11–12.)    This class is ascertainable and meets all six requirements of Rules

23(a) and 23(b)(3).    The Court addresses each in turn.

### 1.    Ascertainability

Plaintiff has the burden of showing, by a preponderance of the evidence, that "(1) the

class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and

administratively feasible mechanism for determining whether putative class members fall within

the class definition.'"    *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v.

Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)).    The class here is ascertainable because the

parties used Lincoln's records to determine the exact number and the identities of class members.

(Doc. No. 45-3 at 2.)

2.      **Rule 23(a) Requirements**

In addition to being ascertainable, the putative class must also satisfy the requirements of

Rule 23(a):   "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation."   *Reyes*, 802 F.3d at 482.

*Numerosity*

While "[t]here is no magic number of class members needed for a suit to proceed as a

class action," the Third Circuit has held that "numerosity is generally satisfied if there are more

than 40 class members."   *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d

410, 426 (3d Cir. 2016).   Here, the proposed class is sufficiently numerous because it consists of

over 1,600 people.   (Doc. No. 45-3 at 2.)   The Court is satisfied that this is enough people to

make joinder impracticable.   Fed. R. Civ. P. 23(a).

*Commonality*

As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality

requirement if the named plaintiffs share at least one question of fact or law with the grievances

of the prospective class."   *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).   It is "easy enough" to meet

the requirement, provided all members of the class have claims that are capable of class-wide

resolution.   *Id.*   Commonality is met here because the claims of class members share several

common questions of law or fact, including:

> (a) whether Defendant engaged in the conduct alleged [in the
> Complaint]; (b) whether there is a difference in value between
> online distance learning and live in-person instruction; (c) whether
> Defendant breached its contracts with Plaintiff and the other
> members of the Class by retaining tuition and fees without providing
> the services the tuition and fees were intended to cover; (d) whether

8

> certification of the Class proposed herein is appropriate under Fed. R. Civ. P. 23; (e) whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and (f) the amount and nature of relief awarded to Plaintiff and the other Class Members.

(Doc. No. 36-1 at 26–27.)   Because the class members' claims share common questions of law and fact, the Court finds that commonality is met here.   *See In re Nat'l Football League Players*, 821 F.3d at 426–27.

## Typicality

There is a "low threshold" for typicality.   *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001).   So long as "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.   *Id.*   The representative Plaintiff's claims are "virtually identical" to those of the class because their claims "arise from the same conduct" of Defendant.   *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023).   Plaintiff and each class member enrolled as an on-campus student at Lincoln for the Spring 2020 semester and paid tuition and fees, but they were allegedly deprived the full benefit of their bargain when Lincoln transitioned to online learning and shut down its campus.   (Doc. No. 36-1 at 27–28.)   Thus, typicality is met here.

## Adequacy of Representation

Courts considering adequacy of representation examine both the qualifications of the class representatives and class counsel.   *In re Nat'l Football League Players*, 821 F.3d at 428.

First, when considering the adequacy of class representatives, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent."   *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v.*

9

*Windsor*, 521 U.S. 591, 625 (1997)).   "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate."  *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).   "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).   Here, this requirement is satisfied because the representative Plaintiff has been active in this case by "reviewing the [C]omplaint, providing information and documentation, where available, to Class Counsel, and approving the Settlement and consenting to the submission of the proposed Settlement for the Court's approval."   (Doc. No. 36-2 at 3.) And the Court discerns no conflict of interest between the representative Plaintiff and other class members—their interests are aligned in attempting to prove the allegations in the Complaint and to establish Lincoln's liability.   (Doc. No. 36-1 at 28.)

Second, with respect to class counsel, the key factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant."  *In re GMC*, 55 F.3d at 801.   The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation.  *See In re Nat'l Football League Players*, 821 F.3d at 429.   Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class.   Fed. R. Civ. P. 23(g)(1)(A).   The Court also

"may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, class counsel—Nicholas Colella, Esquire and Anthony Alesandro, Esquire—are qualified to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). To start, Colella and Alesandro have substantial experience handling class litigation and have worked on many other COVID-19 college refund lawsuits. (*See* Doc. No. 36-2 at 5–6; Doc. No. 36-5.) Next, class counsel vigorously prosecuted this action by investigating the claims, defending the Complaint against Lincoln's motion to dismiss, and reviewing discovery produced by Lincoln. (Doc. No. 44-1 at 14.) Indeed, class counsel spent over 215 hours in diligent pursuit of this case. (*Id.*) And last, the parties worked with Judge Wells to facilitate arms' length negotiations, which weighs in favor of finding adequacy. *See Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 316722, at *6 (E.D. Pa. Jan. 24, 2019) (collecting cases). The Court thus finds that the proposed class's interests have been advanced by experienced and dedicated counsel, working at arms' length from Lincoln in accordance with Rule 23(a)(4).

\* \* \*

In sum, the Court finds that the Rule 23(a) conditions for class certification are met.

### 3.    Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the putative class must also satisfy Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

11

*Predominance*

The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623. The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."  *In re Nat'l Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

Here, predominance is satisfied.  In this college refund lawsuit, Lincoln's conduct was common to all class members, and all class members were harmed by that conduct.  (Doc. No. 36-1 at 29–30.)  Indeed, the central issue for each class member is the same:  "whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with in-person, on-campus instruction, educational services, and use of facilities after March of 2020, yet retaining the tuition and fees paid for the same."  (*Id.* at 29.)  Thus, common questions of law and fact predominate over individual factual questions.  *See Corra v. ACTS Ret. Servs., Inc.*, No. 22-2917, 2024 WL 22075, at *5 (E.D. Pa. Jan. 2, 2024) (holding that common questions predominated even though "there may be slight differences among class members regarding degree of damages or the exact type of injury suffered").

*Superiority*

The parties have also demonstrated the class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class

action." *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Fed. R. Civ.

P. 23(b)(3)(A)–(D)).   Superiority can be satisfied where the settlement prevents "duplicative

lawsuits and enables fast processing of a multitude of claims." *Id.* (quoting *In re Nat'l Football

League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)).

Here, these factors weigh in favor of class litigation.   With over 1,600 class members

and considering the "cost and complexity of the litigation," many potential plaintiffs would

likely "have small claims that would be impractical to litigate on an individual basis." *Corra*,

2024 WL 22075, at \*5; *In re Wawa*, 2023 WL 6690705, at \*5.   (Doc. No. 36-2 at 2.)   Plus,

"where, as here, the Court is confronted with a request for settlement-only class certification,

[the Court] need not inquire whether the case, if tried, would present intractable management

problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Corra*,

2024 WL 22075, at \*5 (quoting *Amchem*, 521 U.S. at 620) (cleaned up).   So, superiority is met

here.

* * *

For these reasons, the Court finds that the requirements of Rules 23(a) and 23(b)(3) are

satisfied, and the Court certifies the class.

## III.    Adequacy of Class Notice

Because the Court has granted final certification to the class, the Court must now

evaluate the adequacy of notice to the class members. *Fein v. Ditech Fin., LLC*, No. 5:16-cv-

00660, 2017 WL 4284116, at \*6 (E.D. Pa. Sept. 27, 2017).   For class notice to be adequate, it

must meet two requirements.   First, Rule 23(c)(2)(B) requires that the class receive "the best

notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort."[2]    Fed. R. Civ. P. 23(c)(2)(B).    Second,

principles of due process "require[ ] that notice be 'reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'"    *In re Nat'l Football League Players*, 821 F.3d at 435

(quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).    The notice

documents must provide a detailed description of the settlement, the circumstances leading to it,

and the consequences of objecting or opting out*.    See In re Diet Drugs Prods. Liab. Litig*., 369

F.3d 293, 310–12 (3d Cir. 2004).

    In granting preliminary approval to the parties' settlement agreement, the Court found

that the proposed notice plan met these requirements.    (*See* Doc. No. 42 at 20–21.)    Now that

the plan has been executed, the Court sees no reason to change its conclusion.    After Lincoln

sent RG/2 a list of potential settlement class members and their email and postal addresses, RG/2

successfully emailed the short-form notice to 1,470 class members.    (Doc. No. 45-3 at 2–3.)

For the class members who could not be reached via email, RG/2 mailed the short-form notice to

them via first-class mail.    (*Id.* at 3.)    Through email and first-class mail, RG/2 calculates that

99.53% of the settlement class was successfully notified.    (*Id.* at 4.)    "Given the . . . high

deliverable rate, the Court finds that the notice satisfied the requirements of Rule 23(c)(2)(B) and

comports with due process."    *Stechert v. Travelers Home & Marine Ins. Co.*, No. CV 17-0784-

KSM, 2022 WL 2304306, at *8 (E.D. Pa. June 27, 2022); *see also Wood v. Saroj & Manju Invs.*

*Phila. LLC*, CIVIL ACTION NO. 19-2820-KSM, 2021 WL 1945809, at *5 (E.D. Pa. May 14,

---

[2]  In addition, Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a
reasonable manner to all class members" of a proposed settlement agreement.    Fed. R. Civ. P. 23(e)(1).
Because this requirement overlaps with the requirements of Rule 23(c)(2)(B), the Court considers these
requirements together.

2021) (finding a 92.8% deliverable rate "reasonably calculated to provide notice to all potential class members").

The Court also finds that the content of the notice was sufficient. The short-form notice sent to the class described the nature of the dispute and the settlement benefit, explained who the class members are and how class members could exclude themselves from or object to the settlement, and informed the class members of the date of the final fairness hearing. (Doc. No. 45-3 at 10–11.) The long-form notice, which was published on the settlement website, included additional related information, such as detailed descriptions of class members' legal rights, descriptions of how the settlement benefit will be paid, information about class counsel, and an explanation about attorneys' fees and the service award to the class representative. (*See* Doc. No. 36-3 at 56–65.) Both the short-and long-form notices explained that class members had 45 days from when RG/2 notifies the class of the settlement to object to or opt out of the settlement. (*See* Doc. Nos. 45-3 at 10–11; 36-3 at 56–65.) These notice documents contained the required information and ensured that "interested parties [were apprised] of the pendency of the action and afford[ed] them an opportunity to present their objections." *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

In sum, the Court finds that the notice efforts here satisfied the requirements of Rule 23 and due process.

## IV.    Final Approval of the Settlement Agreement

Having granted final certification of the Rule 23 class and found notice adequate, the Court now evaluates the fairness of the proposed settlement.

A.    The *GMC*, *Girsh*, and *Prudential* Factors

Under Federal Rule of Civil Procedure 23(e), a court may approve a class action settlement only after "finding that it is fair, reasonable, and adequate."    Fed. R. Civ. P. 23(e)(2).[3] District courts have discretion to decide whether to grant final approval to a proposed settlement. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).    Settlements are entitled to "an initial presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."    *In re GMC*, 55 F.3d at 785.    But when, as here, the parties seek settlement approval and final class certification simultaneously, the Court must examine the fairness of the settlement agreement "even more scrupulous[ly] than usual."    *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

Here, the Court is satisfied that the proposed settlement meets the criteria for final approval.    The settlement agreement is entitled to an initial presumption of fairness because: (1) the parties negotiated the settlement at arms' length with the assistance of Judge Wells (Doc. No. 36-1 at 17–18), (2) prior to reaching a settlement, the parties exchanged "written discovery" and provided each other with "detailed pre-settlement conference submissions setting forth their respective views on the merits of the case, the likelihood the case could be certified as a class

---

[3]  The Court is mindful that Federal Rule of Civil Procedure 23(e)(2) enumerates certain considerations for approving a class action settlement that substantially overlap with the *Girsh* factors. *See Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *19 n.12 (E.D. Pa. Mar. 24, 2020) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the earlier discussion in *Girsh* substantially overlaps with the factors now identified in Rule 23.").    Since the Court previously examined the Rule 23(e) factors at the preliminary settlement approval stage (*see* Doc. No. 42 at 15–19) and since those factors substantially overlap with the *Girsh* factors discussed *infra*, the Court does not address the Rule 23(e) factors again here.

action, the bona fides of the Named Plaintiff to represent the putative class, and positions on the factual support for and viability of the claims asserted in the Complaint" (*id.* at 9–10), (3) class counsel, as described above, have significant experience in similar litigation (*see supra* Section II.B.2), and (4) there were no objections in a settlement class of over 1,600 people (Doc. No. 45-3 at 2, 4). Thus, the *GMC* factors weigh in favor of approval, so an initial presumption of fairness attaches.

While the settlement is entitled to an initial presumption of fairness, the Court must consider the following factors set forth by the Third Circuit in *Girsh v. Jepson* to confirm that it is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.3d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

The first factor—complexity, expense, and likely duration of the litigation—is met because this class action lawsuit is in "an area of law that has not yet been fully developed." *In re Wawa*, 2023 WL 6690705, at *7. And, if the litigation were to continue, Plaintiff and the settlement class would face many challenges and expenses associated with class action litigation, including obtaining class certification, briefing motions for summary judgment, and maintaining

class certification through trial.  *Id.*  (Doc. No. 36-1 at 21–22.)   Thus, the first *Girsh* factor weighs in favor of approving the proposed settlement agreement.

The second factor—the reaction of the class to the settlement—also favors final approval. In a class of over 1,600 people, there were no objections or opt outs.   (Doc. No. 45-3 at 2, 4.) Given this "minimal number of objections and requests for exclusion," this *Girsh* factor favors final approval.  *Sullivan*, 667 F.3d at 321.

The third factor—stage of the proceedings and the amount of discovery completed— considers whether "counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.   Here, Plaintiff's counsel exchanged "written discovery" with defense counsel and provided defense counsel with a detailed submission that set forth their "view[ ] on the merits of the case, the likelihood the case could be certified as a class action, the bona fides of the Named Plaintiff to represent the putative class, and [their] position[ ] on the factual support for and viability of the claims asserted in the Complaint."  (Doc. No. 36-1 at 9–10.)   So, while the case is "somewhat early in the litigation process," the Court finds that counsel "have adequately developed their case and engaged in a significant degree of case development."  *In re Wawa*, 2023 WL 6690705, at *8 (holding that the third *Girsh* factor weighed in favor of approving settlement where the case was "somewhat early in the litigation process," because although the parties conducted only limited discovery, they exerted significant effort in the settlement negotiations).   The third factor thus weighs in favor of approving the settlement.

The fourth and fifth factors—risks of establishing liability and damages—also weigh in favor of the settlement.   Class counsel explained that there is a risk of establishing liability, and

in turn, damages, because this case involves an emerging area of the law, and there are risks associated with proving the existence of an implied contract as well as proving that Lincoln has been unjustly enriched.   (Doc. No. 36-1 at 20–21.)   So, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving the settlement.

The sixth *Girsh* factor—the likelihood of maintaining class certification if the action were to proceed to trial—weighs in favor of approval because there "will always be a 'risk' or possibility of decertification."   *In re Prudential*, 148 F.3d at 321.

The seventh *Girsh* factor—the likelihood of Defendant to withstand a greater settlement—is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement."   *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).   At the preliminary approval hearing, the parties mentioned that Lincoln has had some recent financial struggles.   The parties confirmed at the final approval hearing that Lincoln remains in a similar financial situation.   The Court thus finds that this factor weighs in favor of approval.

Last, the eighth and ninth factors—the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation—ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case."   *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.   Here, the settlement is reasonable in light of the best possible recovery and attendant risks of litigation. COVID-19 litigation is still an emerging area of law, and there are risks in establishing both the existence of an implied contract as well as the fact that Lincoln was unjustly enriched.   Plus, the

19

recovery per student is $52.84 after accounting for administration fees, attorneys' fees, litigation expenses, and the service award.[4]   This recovery is reasonable because the tuition for Lincoln's Spring 2020 semester was "only $4,000."   (Doc. No. 36-1 at 20.)   When this recovery amount is expressed as a percentage of tuition, the recovery per student is 1.32%, which is a higher percentage-of-tuition recovery than in a similar class action settlement in this district.   *See Cantave v. Saint Joseph's Univ.*, No. CV 23-3181, 2024 WL 4829718, at *5 (E.D. Pa. Nov. 19, 2024) (approving a recovery per student of "$277" when St. Joseph's Spring 2020 tuition was "$23,175", which results in a percentage-of-tuition recovery per student of 1.20%).   The Court thus finds that the final two factors weigh in favor of approval.

In addition to consideration of the *GMC* and *Girsh* factors, the Third Circuit has advised that "when appropriate," "it may be helpful to expand the *Girsh* factors" to include non-exclusive factors, such as:   "the maturity of the underlying substantive issues;" "the existence and probable outcome of claims by other classes and subclasses;" "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants;" "whether class or subclass members are accorded the right to opt out of the settlement;" "whether any provision for attorneys' fees are reasonable;" and "whether the procedure for processing individual claims under the settlement is fair and reasonable."   *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (quoting *In re Prudential*, 148 F.3d at 323).

---

[4]  After the final approval hearing, the Court asked the parties how much they have spent to date on settlement administration and how much more they expect to spend on it.   Class counsel responded that they have spent $13,734 on settlement administration to date and expect to spend another $6,758 on it.   After subtracting from the settlement fund these administrative expenses as well as the attorneys' fees, litigation expenses, and reduced service award, the Court estimates that the final recovery per student will be around $52.84, but the actual recovery may be slightly less due to taxes.

Here, these factors also weigh in favor of approving the settlement.   In particular, the provision for proposed attorneys' fees of no more than 33.3% of the settlement is reasonable. (Doc. No. 36-3 at 32.)   "Courts in the Third Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable."   *Barletti v. Connexin Software, Inc.*, No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (internal quotations omitted).   And, as discussed, class members had the right to opt out of the settlement, and they will receive their settlement benefit without the need to take further action.   (*See* Doc. No. 36-3 at 53–65.)   Thus, these additional factors favor the settlement.

\* \* \*

In sum, the settlement agreement is fair, reasonable, and adequate, and does not otherwise reveal any deficiencies.   It is entitled to a presumption of fairness, and that presumption is supported by the *Girsh* and *In re Pet Food* factors.

## V.    Approval of Service Award to the Class Representative

Plaintiff requests approval of a $2,500 service award to the named Plaintiff as the class representative.   (Doc. No. 44-1 at 21–22.)   Plaintiff argues that a total service award of $2,500 is reasonable because Plaintiff "[r]eviewed the complaint, was prepared to produce documents and testimony, and participated in the settlement discussions that resulted in the excellent recovery to the Settlement Class."   (*Id.* at 21.)   In addition, she told class counsel about "her experience with the transition to online remote-only education and services and her resulting damages", which was "crucial to the development of a workable damage model to facilitate the mediation process."   (*Id.*)   Yet Plaintiff did not attend the Zoom settlement conference with Judge Wells or appear for the preliminary approval or final approval hearings.

21

"There is substantial precedent from [the Third] Circuit supporting approval of incentive payments." *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 353–54 (D.N.J. Oct. 20, 2020) (collecting cases). "Factors that courts consider in deciding to grant incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (citing *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, the Court finds that the proposed service award is high given the named Plaintiff's actual involvement in this class action lawsuit. This case settled at a relatively early stage in the litigation, Plaintiff was not deposed, and she did not attend the preliminary or final approval hearings. *See In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 5107594, at *12 (E.D. Pa. Dec. 13, 2024) (lowering a proposed service award to $500 for each class representative for these reasons); *Erby v. Allstate Fire & Cas. Ins. Co.*, No. CV 18-4944-KSM, 2022 WL 14103669, at *17 (E.D. Pa. Oct. 24, 2022) (lowering a proposed service award because Plaintiff "did not sit for a deposition" and there was "no indication that he was particularly involved in this litigation"); *Lunemann*, 2024 WL 3744359, at *11 (reducing proposed service award because Plaintiff was not deposed and did not attend the Court's hearing on preliminary settlement approval, and the case settled at a relatively early stage in the

22

litigation); *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 771 (E.D. Pa. 2016) (decreasing service award in part because "there is no indication that the Named Plaintiffs were deposed, attended any settlement negotiations or court proceedings, . . . or expended any other resources to advance the case"); *Romero v. La Revise Assocs.*, 58 F.Supp.3d 411, 422 (S.D.N.Y. 2014) (lowering service award in part because the named plaintiff was not deposed and did not attend the mediation or any court proceedings).   The Court will thus reduce Plaintiff's service award to $750.

## VI.    Approval of Attorneys' Fees

Plaintiff also requests approval of attorneys' fees in the amount of $56,494.35.   (Doc. No. 44-3.)   "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."   Fed. R. Civ. P. 23(h). Attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar method.   *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017).   When, as here, the settlement funds come from a common fund, courts generally evaluate the attorneys' fees' reasonableness using the percentage-of-recovery method, with a lodestar crosscheck.   *Id.*

### A.    Percentage-of-Recovery Method

"The percentage-of-recovery approach compares the amount of attorneys' fees sought to the total size of the fund."   *Id.*   In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel;

and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n.1 (3d Cir. 2000).   Courts also generally

consider three additional factors:

> (8) [T]he value of benefits attributable to the efforts of class counsel
> relative to the efforts of other groups, such as government agencies
> conducting investigations, (9) the percentage fee that would have
> been negotiated had the case been subject to a private contingent fee
> arrangement at the time counsel was retained, and (10) any
> innovative terms of settlement.

*In re Diet Drug*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *In re Prudential Ins*, 148 F.3d at 338).

Class counsel request approval of attorneys' fees in the amount of $56,494.35, which

represents approximately 33.33% of the monetary value of the settlement.   (Doc. No. 44-1 at 7.)

The Court reviews each of the *Gunter*/*Prudential* factors below.

*Factor 1: Size of the Fund Created and Number of Beneficiaries.*   The first factor weighs

in favor of approval because the $169,500 settlement fund gives class members a significant

benefit.   (Doc. No. 36-3 at 13.)   After deducting fees, expenses, and awards, the recovery per

student is roughly $52.84 or 1.32% of the tuition they paid for the Spring 2020 semester, which

is comparable to other similar class action settlements.   *See, e.g., Pfeifer et al v. Loyola Univ. of

Chicago*, No. 1:20-cv-3116 (N.D. Ill.) (approving a $1,375,000 million settlement with a per

student recovery of $88); *Cantave*, 2024 WL 4829718 at *2 (approving a recovery per student of

1.20% of the tuition they paid for the Spring 2020 semester).   The Court thus finds that the first

factor favors approval.

*Factor 2: Presence or Absence of Substantial Objections.*   The second factor weighs in

favor of approval because in a class of 1,695 people, there were no objections or opt outs.   (Doc.

No. 45-3 at 4.)   *See Nguyen v. Educ. Computer Sys., Inc.*, No. 2:22-CV-1743, 2024 WL

3691614, at *2 (W.D. Pa. Aug. 7, 2024) (finding this factor favored approval because in a class of over 537,000 people, "only two objections were asserted, and both were withdrawn prior to the . . . final approval hearing").

*Factor 3: Skill and Efficiency of Attorneys Involved.*    The third factor favors approval because class counsel is skilled, experienced, and efficiently litigated this matter.    Indeed, class counsel have substantial experience handling class litigation and have worked on many other COVID-19 college refund lawsuits.    (*See* Doc. No. 36-2 at 5–6, Doc. No. 36-5.)    In preliminarily approving the settlement, the Court found that Nicholas Colella, Esquire and Anthony Alesandro, Esquire were competent to serve as class counsel.    (Doc. No. 42 at 11.) Nothing has changed to undermine the Court's confidence in their ability.    So, this factor favors approval.

*Factor 4: Complexity and Duration of Litigation.*    The fourth factor favors the attorneys' fee request.    During this case, class counsel successfully defended the Complaint against Lincoln's motion to dismiss.    (Doc. Nos. 12, 13.)    And as class counsel highlights in their brief, there are substantial and nuanced legal issues in this case, such as the appropriate measure of damages.    (*See* Doc. No. 44-1 at 13.)    Thus, this factor favors approval.

*Factor 5: Risk of Nonpayment.*    The fifth factor also favors approval because class counsel pursued this litigation on a contingency fee basis and incurred out-of-pocket expenses to advance this case.    (*See id.* at 13–14.)    "Taking such a risk on behalf of the class lends credence to the fee request . . . and thus this factor supports approval."    *Corra*, 2024 WL 22075, at *14.

*Factor 6: Time Devoted by Class Counsel.*    The sixth factor likewise favors approval because class counsel spent over 215 hours in pursuit of this litigation.    (*See* Doc. No. 44-1 at

14.)  *Cf. In re Phila. Inquirer Data Sec. Litig.*, No. CV 24-2106-KSM, 2025 WL 845118, at \*13
(E.D. Pa. Mar. 18, 2025) (finding this factor met because "class counsel spent over 290 hours in
pursuit of this litigation").

      *Factor 7: Awards in Similar Cases.*   The seventh factor also favors approval.   Courts
using the percentage-of-recovery method to calculate attorneys' fees generally approve fees
ranging "from roughly 20–45%."   *Marby v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at
\*4 (E.D. Pa. Aug. 24, 2015) (collecting cases).   Class counsel request roughly 33.33% of the
settlement fund.   (Doc. No. 44-1 at 7.)   Because courts regularly approve fee awards around
this size, this factor favors approval.   *See Fein*, 2017 WL 4284116, at \*12 (finding a fee award
that represented 33% of the settlement reasonable).

      *Factor 8: Value of Benefits Attributable to the Efforts of Class Counsel.*   The eighth
factor supports the fee request because "[t]here is no indication that any other groups, such as
government agencies conducting investigations, have contributed to this case and Settlement."
*Corra*, 2024 WL 22075, at \*15; *see also Pinnell v. Teva Pharms. USA, Inc.*, No. 19-cv-5738,
2021 WL 5609864, at \*1 n.2 (E.D. Pa. June 11, 2021) (finding that this factor weighed in favor
of awarding the requested fees where there was no evidence that anyone other than class counsel
initiated the action).

      *Factor 9: Percentage that Would Have Been Awarded in Private Contingency
Arrangement.*   The ninth factor supports the fee request because class counsel requests 33.33%
of the distribution to the class, which tracks the median attorneys' fees in class actions.   *See
Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) (explaining that the
median attorneys' fee award in class actions is one-third, or 33%).

*Factor 10: Innovative Terms of Settlement.*   Because the settlement does not contain any innovative terms, this factor neither weighs in favor nor detracts from a decision to award attorneys' fees."   *In re Processed Egg Prods. Antitrust Litig.*, No. 08–md–2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012) (internal quotations omitted).

In sum, the Court finds that the *Gunter/Prudential* factors weigh in favor of the requested attorneys' fees.

### B.    Lodestar Crosscheck

The Third Circuit has recommended that courts crosscheck the reasonableness of the requested attorneys' fees using the lodestar method.   *Gunter*, 223 F.3d at 195 n.1.   "The purpose of the cross-check is to ensure that the percentage approach does not result in an 'extraordinary' lodestar multiple or windfall."   *Whiteley v. Zynerba Pharms., Inc.*, No. CV 19-4959, 2021 WL 4206696, at *13 (E.D. Pa. Sept. 16, 2021) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001)).   "The lodestar method 'multiplies the number of hours counsel worked on the case by a reasonable hourly billing rate for such services,' and compares that amount to the attorneys' fees sought."   *Halley*, 861 F.3d at 496 (quoting *Sullivan*, 667 F.3d at 330).

Class counsel report that they spent a total of just over 215 hours on this case.   (Doc. No. 44-1 at 17–18.)   This yields a collective lodestar of $142,665.   (*Id.*)   The chart below summarizes the time spent on this case by class counsel.

| Firm | Hours | Lodestar |
|---|---|---|
| Lynch Carpenter, LLP | 193.9 | $131,395 |
| Leeds Brown Law, P.C. | 21.7 | $11,270 |

| Total | 215.6 | $142,665 |
|-------|-------|----------|

(Doc. No. 44-2 at 4.)

The Court finds that class counsel's total billable hours are reasonable.   Class counsel

spent just over 215 hours working on this case.   (Doc. No. 44-1 at 17–18.)   Their time was

spent drafting the Complaint, researching and drafting a brief in response to a motion to dismiss,

reviewing documents from Lincoln, preparing for and participating in the settlement conference,

negotiating and drafting the settlement agreement, and coordinating with the settlement

administrator to facilitate the notice and claims processes.   (*Id.* at 19.)   Thus, the Court finds

that the total number of billable hours are reasonable.

The Court further finds that class counsel's hourly rates are reasonable.   As set forth in

Nicholas Colella's declaration, the hourly rates charged by class counsel appear to track the

"position, experience, level, and location" of the lawyers and paralegals with the highest rate at

$800 per hour for Nicholas Colella, Esquire and other hourly rates "progressively working

downward."   *In re Suboxone*, 2024 WL 815503, at *17; (Doc. No. 44-2 at 4).   Courts in this

circuit have found similar rates reasonable.   *See, e.g.*, *Fulton-Green*, 2019 WL 4677954, at *12

(concluding that class counsel's rates were reasonable when they ranged from $202 to $975 per

hour); *In re Suboxone*, 2024 WL 815503, at *17 (concluding that class counsel's rates were

within the reasonable range for their experience and for the region when "the highest rate was at

$1550 per hour").

The lodestar crosscheck yields a negative multiplier of roughly 0.39 because the lodestar

($142,665) is higher than the requested fee ($56,494.35).   "A lodestar multiplier of less than

one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval."   *Altnor*, 197 F. Supp. 3d at 767 (citing *Carroll v. Stettler*, No. 10–2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011)).   So, the Court finds that the lodestar crosscheck also favors the requested attorneys' fees.

* * *

Having considered the *Gunter*/*Prudential* factors and the lodestar crosscheck, the Court finds that the fee request of $56,494.35 is reasonable and approves a payment of $56,494.35 to class counsel as attorneys' fees.

## VII.    Approval of Class Counsel's Expenses

Class counsel last request that the Court approve their reimbursement request of $2,381.77 in litigation expenses.   (Doc. No. 44-2 at 5.)   These expenses include filing fees, service of process fees, postage, and travel costs.   (*Id.*)   These expenses are reasonable, and no class member objected to the reimbursement of these expenses, so the Court will grant class counsel's request for reimbursement.   *See Erby*, 2022 WL 14103669, at *17 (approving "reimbursement for $22,004.82 in out-of-pocket litigation expenses"); *see also Stechert*, 2022 WL 2304306, at *15 (approving fee request for $22,004.82 in litigation expenses, which "include[d] filing fees, service of process fees, expert and professional services fees, deposition expenses, PACER research, travel fees, and administrative expenses such as printing, photocopies, and similar items").

## VIII.    Concluson

For the reasons above, the Court grants Plaintiff's motion for final approval of the class settlement agreement and approves Plaintiff's request for an award of attorneys' fees,

reimbursement of expenses to class counsel, and a reduced service award for the class representative.   An appropriate Order follows.